41 715
52 290

## THE INTER-STATE CONSOLIDATED RAPID TRANSIT RAILWAY COMPANY v. WILSON H. FOX, *as Administrator of the estate of J. M. Hite, deceased.*

1. RAILROAD COMPANY, *Culpably Negligent.* Where men are rightfully at work on a trestle over which a railroad is operated, and the officers and persons operating the road have knowledge that the men are so at work, and that by the operation and running of trains over the trestle while such work is being done the men are thereby placed in great danger, under such circumstances it is the duty of the railroad company to operate and run its trains with care proportionate to the danger of the men so employed; and where it does not do so, and injury occurs by reason thereof, the company is guilty of culpable negligence.

2. CONFLICTING EVIDENCE — *Conclusive Verdict and Findings.* Where conflicting evidence on the questions of the negligence of a railroad company in operating its trains on the one part, and of contributory negligence and want of ordinary care on the part of the person who is injured, is submitted to a jury, their verdict and findings thereon are conclusive.

3. INSTRUCTION — *Refusal, When not Material Error.* Where a party requests a proper instruction to be given to a jury, which is by the

court refused, but subsequently another instruction is given, in which the substance of the refused instruction is included, *held*, the refusal to give such instruction is not material error.

4. ———— *Refusal, not Error.* Where an instruction is requested which if given, would have a tendency to mislead and confuse a jury, *held*, the refusal to give such instruction is not error.

*Error from Wyandotte District Court.*

ACTION brought by *Wilson H. Fox*, as administrator of the estate of J. M. Hite, deceased, against the *Inter-State Consolidated Rapid Transit Railway Company*, to recover damages for wrongfully causing the death of Hite. Trial at the November term, 1887; verdict for plaintiff for $9,000; new trial denied, upon condition that the plaintiff remit one-half of the verdict; said condition being accepted, judgment for $4,500 was rendered for the plaintiff. The defendant brings the case to this court. The opinion states the facts.

*Usher & Loomis*, and *Warner, Dean & Hagerman*, for plaintiff in error.

*Sherry & Hughes*, for defendant in error.

Opinion by CLOGSTON, C.: This action was brought in the district court of Wyandotte county, to recover for the death of J. M. Hite, who was run over and killed by a train of cars on the Inter-State Consolidated Rapid Transit Railway Company's road, on the 21st day of October, 1886. At the time of the accident, Hite was employed as a carpenter in the construction of what is known as the Splitlog trestle, and had been so at work for about five months. He was working immediately under E. T. Allen, a contractor under the Inter-State Construction Company, who had contracted to build the road, including this trestle. The plaintiff in error insists that the judgment must be reversed, first, for the reason that the record shows that the defendant was guilty of no negligence causing the death of Hite; and second, because the record shows that the deceased was guilty of negligence which contributed directly to his death. As these are questions of fact, and as they

were submitted to the jury, and the jury returned in answer thereto that the defendant below was guilty of negligence in causing the death of Hite, and that the deceased was not guilty of negligence contributing thereto, before the plaintiff's theory can be sustained it must be determined from the record that there was no evidence of any kind upon which the jury might make the findings of negligence on the part of the defendant, and the want of negligence of the deceased.

First, as to the negligence of the defendant, plaintiff in error. The jury, as we said above, found such negligence; and in the evidence we find in support of that finding this state of facts: That Hite, the deceased, went to work on the morning of October 21, at 7 o'clock, and was run over and killed by a train of cars on the defendant's road about half-past 7 in the morning. The morning was very foggy, so much so as to prevent the seeing of a person or object except but for a short distance. The work that Hite was engaged in at the time of his injury was the putting down of a guard-rail on this trestle. The trestle was about 750 feet long and about 20 feet wide, on which were constructed two tracks, one for the north- and the other for the south-bound trains. Cars had been running over the trestle at the time of the injury for some three or four weeks. On the morning of his death, Hite was working on the north-bound track. A train was approaching on that track, ringing the bell and running slowly, and to get out of the way of the train he stepped over upon the south-bound track, and was struck and run over by a train going south, which train was running at a rapid rate of speed, and gave no signal to warn the men at work of its approach. In addition to this, Allen, the contractor, testified that the company was hurrying him up to complete the trestle, and he was asked, "What information, if any, had you given the company that the men were to go to work on the trestle?" Allen, in answer, said: "They knew it, and they had urged me to finish the work as soon as possible. In speaking of the company, I mean Mr. Edgerton and Mr. Hager. Mr. Hager was superintendent of transportation; Mr. Edgerton is presi-

dent, and superintendent of construction. I had the position of superintendent of trestle-work and bridges, and was under the direction of the chief engineer and general superintendent of construction." He was asked:

"Q. What information did Edgerton or Hager have that these men were at work on the trestle at the time of the accident? A. I don't know that they had any information of it at the exact time, but they knew that the work was progressing, for they were riding over the road several times each day. The work being done was putting on guard-rails.

"Q. What conversation, if any, did you have with Hager and Edgerton as to the danger of the men at work on the trestle while the trains were running, and what direction did you request him to give to the engineers of the trains, if any? A. I requested Mr. Hager to direct the engineers to run slowly over the trestle-work, and if necessary, to stop to allow my men to get out of the way. This he promised to do.

"Q. Was this all the conversation you had about it? A. We had other conversations, but not as to what was to be done in the future, at which time I told him it was extremely dangerous for the men to work on the trestle while the trains were running. I had previously had a conversation with him in which I asked him to have the trains stopped entirely while the trestle was being completed; to have their temporary terminus at the north of Splitlog trestle instead of River View station. His answer was that we might as well stop running over the entire road."

It is insisted, however, that this conversation with Edgerton and Hager, and their promise in relation to running the trains, was no protection to Hite, for the reason that he was not informed of the promise, and that it was not by reason of the promise that he went to work upon the trestle. This the jury found to be true, but will this excuse the company for the reckless and careless manner in which it was operating the trains at the time of the injury? The place where Hite was at work was eminently dangerous, because of the fact that trains were being operated over the road and likely to pass and repass where he was at work. This made the danger. The evidence also shows that the work was almost

completed, and would have been finished on the day of the accident.

Again, there was additional danger on that morning, by reason of the dense fog that prevailed; and it is now urged that by reason of this fog and the dangers caused by it, Hite's death was caused by going to work in a dangerous place on a foggy morning without any promise that the railroad company would exercise care to protect him from injury. And while, as we said before, it is true that he had no knowledge of the promise of protection, yet can this promise be entirely ignored? We think not. This conversation was had and the promise made on the Saturday preceding the injury, which occurred on Thursday. At the time of this conversation the work had been going on in the night-time so as to avoid the danger. Allen was being urged by the company to finish his work, and to comply with its demands he had this conversation to request protection for his men. After this conversation he did not place the men at work in the daytime on the trestle, until Wednesday afternoon, at which time a gang of men went to work on the trestle, and continued working there during the afternoon, and on Thursday morning again commenced work there. On Thursday morning there were about fourteen men working on the trestle. The evidence also shows that trains had been running over the trestle every fifteen minutes for about an hour and a half that morning. This is all the evidence showing that the company had knowledge that the men were there at work. Is this sufficient? There is, first, the conversation on Saturday with Allen, in which he informed the company in substance that he was going to put the men at work on the trestle; second, the statement of Allen that Edgerton and Hager knew the men were there at work, for they were passing over the road several times each day. It must be remembered that Mr. Edgerton was president of the company and superintendent of the construction. Now, holding this position, and passing over the road several times each day, urging Allen at the time to complete the work, the work being done under his supervision, can it be said that he did not know

that the work was progressing? And if he knew it was progressing, that the work was being done in the daytime? Then the men were at work there the day before, and it was practically impossible for the trains to be operated and the men operating the trains not to be aware of the fact that men were engaged in putting down these guard-rails.

Again, on the morning of the injury trains had been running over the road for about an hour and a half. This evidence we think clearly shows, or is sufficient upon which the jury might find, that the company had knowledge that the men were at work putting down the guard-rails on the morning of the injury; at least, it is evidence tending to show that fact; and as the jury has found for the plaintiff, we must resolve all doubts in favor of the verdict of the jury. Then, knowing the fact that the men were at work in this dangerous place upon that foggy morning—so foggy that the engineers of the trains could not see a man on the trestle but for a few feet —it was the duty of the company to operate the trains with care proportionate to the danger of the men thus employed. It knew the danger; it should have conducted the business commensurate to the danger to which the men were exposed. If it did not do this, it was guilty of culpable negligence.

1. Railroad company, culpably negligent.

The train that ran over Hite, the jury found was running at the rate of twelve or fifteen miles an hour; and they also found that this was a greater speed than usual. The jury also found that the company gave no signals, either by ringing the bell or otherwise, to inform the workmen on the trestle of the approach of the train. This it had no right to do with the knowledge which it had, or ought to have had, from the surrounding circumstances. But it is insisted that even if this is all true, and the company was guilty of culpable negligence, yet the plaintiff ought not to recover, because of Hite's own negligence, contributing to his injury; and it is insisted that Hite went upon this dangerous work on the morning of the injury, in the fog, without any assurance of protection from the company, and with no knowledge of the promise

made to Allen by the company for his safety. This is true. He was placed there to work by his employer, and while he had no knowledge of it, yet here was a promise made for his benefit by the company to his employer, and his employment was not extremely dangerous if this promise was kept by the company. No showing is made as to the manner of running the trains on this Wednesday afternoon, or in fact as to how they were operated on the morning of the injury, save and except as to two trains that passed at the point where he was at work, causing his death; and it is shown that one of these trains was ringing the bell and running very slowly, giving the men ample time to get out of the road; while the other train was running very rapidly, giving them no signal. This is the entire history of the manner in which the train was run. It may perhaps be inferred that the trains on the day previous, and on this morning up to the time of the accident, were run in a proper manner, carrying out the spirit of the promise to Allen, and he may have worked there during this time with comparative safety. If he did, then he had no knowledge of the danger that caused his death. It is true that witnesses testified to the usual rate of speed in running over the trestle, but whether that was the rate of speed at which the trains ran in times when men were at work on the trestle, or at times when no one was working there, is not stated; and as before stated, all doubts must be resolved in favor of the findings of the jury. And therefore we cannot say, as a matter of law, under the facts in this case, that Hite was guilty of such contributory negligence as to prevent a recovery. There was evidence, we think, of the

2. Conflicting evidence—conclusive verdict and findings.

negligence of the company, and there was evidence of the conduct of Hite, and of the care that had been taken to secure the safety of the men. All these facts went to the jury, upon which we think they might fairly find negligence or the want of negligence. It being a question of fact submitted to them, their findings conclude us.

The next objection urged by the plaintiff in error is, that

the court refused to give all of the fourth instruction asked by the defendant.    That part of the fourth instruction which

3. Instruction, refusal, when not material error.

the court refused to give was afterward substantially given in the sixth and seventh instructions; and where an instruction is asked that would be proper, yet if afterward, or in other instructions, the same proposition is submitted to the jury, it is not error for the court to refuse to give the instruction as asked.

The next objection is, that the court modified the fifth instruction, which instruction is as follows:

"5. When an employé of a railway company enters upon its service with knowledge of the character and position of structures, and the manner of running trains over such structures, he assumes all apparent risks, and cannot maintain an action for injuries resulting from such apparent risk; and as applied to this case, if the deceased knew the trestle and the manner of running trains over the same, and passing of the same thereon, and that a dense fog was prevailing, and continued to work on the track or tracks of the railroad on the trestle, then he assumed the risk of such service; and if he was injured in consequence of the trains running over the trestle and passing each other thereon, at or near where he was at work, and from not being able to see both trains, owing to the fog, in time to get out of the way of both, then plaintiff cannot recover, and the verdict should be for the defendant."

To the foregoing the court on its motion added the following:

"Unless you find from all the circumstances proven on the trial that the railway company was negligent in running its trains at the time, and by such negligence caused the death of said J. M. Hite, and further find that the acts of Hite were not negligent directly contributing to his death."

We see no error in this modification, for if the company was running its trains on the morning of the injury, knowing that the men were at work, and also knowing the condition of the weather, and with this knowledge ran its trains at a rapid rate of speed, without signals, and under these circumstances Hite was run over and killed, without negligently do-

ing any act contributing to his death, then the company would not be excused for its negligence.

The seventh instruction is also complained of because the court modified it substantially with that of the fifth, omitting only to call the attention of the jury to the fact that Hite must also be free from negligence; but as the court in its modification of the fifth instruction properly gave the law once, the modification of the seventh instruction was not material error.

The last objection raised is, that the court refused to give the fifteenth instruction, as asked by the defendant, which is as follows:

"15. If the jury believe from the evidence that those in charge of the south-bound train which ran over Hite, owing to the fog that was prevailing had no sufficient reason to suppose that Hite or others were at work on the trestle, then the jury cannot find that those in charge of the train were negligent in running the train even a rapid rate of speed exceeding the ordinary rate."

This instruction if given would have had a tendency to mislead the jury. It assumes that if the persons who were operating the train had reason to suppose that Hite and others were not at work on the trestle, then it was not negligence for those in charge of the train to run it at a greater rate of speed than ordinarily; and from this the jury might have inferred that if such employés were guilty of no negligence in so running the train, then the company also was not guilty of negligence in permitting the train to be so run. If the company, the officers of the road, the persons whose duty it was to know, or who under the circumstances ought to have known, had knowledge, then it would not excuse the company from liability by showing that a particular engineer, or the particular conductor of the train, was guilty of no negligence in running the train at a greater rate of speed than ordinarily. Therefore we think that the court committed no error in refusing to give the fifteenth instruction requested.

4. Refusal to give misleading instruction, not error.

In conclusion, it may be said that the law of negligence on the part of the company, or what constitutes negligence, and what was negligence on the part of the deceased which would preclude his recovery, were very clearly defined and given to the jury; and from all the instructions we are free to say that we think the jury were as favorably instructed for the defendant's view and theory of the case as the law would warrant, and it has no ground for complaint as to the instructions given or refused. We are therefore of the opinion, that while the facts and circumstances show a close question as to the contributory negligence of the deceased, yet we are not willing to disturb the findings of the jury upon the facts shown and found by them.

It is therefore recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.