NICOLANGELO POMPONIO, ADMR., *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1895. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

As a general rule a landowner owes a more limited duty respecting his premises, to one who is there as a mere licensee, than to one who is there by his invitation, express or implied. But the distinction has no application to the positive, active negligence of the landowner; in this respect he owes as high a duty to the licensee, while on his premises, as to the person invited.

The defendant had for years planked and maintained a crossing upon its tracks for the use of a manufacturing company, whose shops extended for some distance alongside the railroad upon either side; and this crossing had been daily and regularly used by several hundred employees in said shops in going to and from their work, and by others having business with the manufacturing company. The plaintiff's intestate while going to his work at one of the shops, after the noon intermission, was, without fault upon his part, struck and killed at said crossing, by the negligent act of the defendant in switching its cars. *Held:*—

1. That it was immaterial whether the decedent was upon the crossing as a licensee, or by implied invitation; in either case the defendant was bound to use such reasonable precautions in the management of its trains, as ordinary prudence demanded for the protection of those who at that time would probably be rightfully using the crossing.

2. That in view of the peculiar facts disclosed by the record, the case must be regarded as one of implied invitation rather than one of mere license.

3. That whether the decedent was upon the crossing as a trespasser, a licensee, or by implied invitation, it was his duty to use ordinary care to avoid danger and injury to himself; but that more than this the law did not require of him. Whether he had discharged that duty was a question of fact for the trier upon all the evidence, and his conclusion thereon is not reviewable by this court upon appeal.

[Argued June 6th—decided July 19th, 1895.]

ACTION for damages for negligently causing the death of the plaintiff's intestate, brought to the District Court of Waterbury, and thence by the plaintiff's appeal to the Superior Court for New Haven County, where the case was heard in damages by the court, *Prentice, J.;* facts found and judgment rendered for the plaintiff for $3,750 damages, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Stephen W. Kellogg* and *John P. Kellogg*, for the appellant (defendant).

I. The fundamental question is whether the deceased was upon the crossing at the time of the accident by reason of the implied invitation of the defendant, or whether he was there simply as a licensee. The duties and obligations imposed upon both of the parties vary greatly as this question may be decided, and what might be considered negligence in the one case could not be so considered in the other.

The trial judge found from the evidence, as a matter of law, that the deceased was upon the crossing at the time of the accident by the implied invitation of the defendant. In this there was error. *Hargreaves* v. *Deacon*, 25 Mich., 1; Beach on Contributory Neg., § 51; *Bennett* v. *Railroad Co.*, 102 U. S., 584; 16 Amer. & Eng. Ency. of Law, 414.

The fact that this crossing had been there maintained for many years, and its use open and known to the world, can have no legal weight against the defendant. There never was any claim of right to the crossing, and never any claim adverse to the defendant. Also the further fact that the defendant kept the crossing planked, cannot weigh against the defendant, as it was only the natural consequence of the tacit permission of the defendant to the corporation to use the crossing in the manner it did.

II. If the deceased was upon this crossing as a licensee merely, the defendant owed him no duty of active vigilance to protect him from accident. *Nicholson* v. *Erie R. R. Co.*, 41 N. Y., 525; *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 id., 243; *Morgan* v. *Penn. R. R. Co.*, 7 Fed. Rep., 78; *Richards* v. *Chicago, St. Paul & Kan. City R. R. Co.*, 45 Amer. & Eng. Ry. Cases, 54; *Ill. Cen. R. R. Co.* v. *Godfrey*, 71 Ill., 500, 22 Amer. Rep., 112; *Spicer* v. *Ches. & Ohio R. R. Co.*, 11 L. R. A., 385; *McLaren* v. *Ind. & Vicennes Ry. Co.*, 8 Amer. & Eng. Ry. Cases, 217; 4 Amer. & Eng. Ency. of Law, 914.

The case of *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239, expressly holds that the inference or conclusion of negligence is reviewable, if it appears that the trial court imposed some duty on the defendant which the law did not impose.

The deceased did not do all that is required as a matter of law from those approaching any crossing of a railroad; and especially one in which the deceased had no actual legal right other than that of a mere licensee. Pierce on Railroads, p. 343. *Woodward* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y., 369; *Hinckley* v. *Cape Cod R. R. Co.*, 120 Mass., 257; *Elliott* v. *C. M. & St. P. R. R Co.*, 3 L. R. A., 363; *Owens* v. *Penn. R. R. Co.*, 41 Fed. Rep., 187; *Railroad Co.* v. *Houston*, 95

U. S., 697 ; *Schofield* v. *C. M. & St. P. R. R. Co.*, 114 U. S., 615 ; *Peck* v. *N. Y., N. H. & H. R. R. Co.*, 50 Conn., 392.

The finding discloses that there was no evidence that any one observed, or was in a position to observe, the deceased, to see whether or not he looked up the track before starting to go over this crossing. But it can be clearly seen from the finding, that the deceased could not have made use of his senses as the law requires at such crossings. The only obstruction for hundreds of feet was this open iron bridge, and that only thirty-four feet away; and, as the finding shows, a car upon it could not be wholly hidden.

*Charles G. Root*, for the appellee (plaintiff).

If there was any duty whatever toward the deceased, imposed upon the defendant, then the question of negligence ought to be left to the trier. *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn., 461, 471 ; *Hanks* v. *B. & A. R. R. Co.*, 147 Mass., 495 ; *Taylor* v. *Del. & Hud. Canal Co.*, 113 Pa. St., 162, 57 Am. Rep., 446.

It is manifest from the facts found, that the relation between the deceased and the defendant was such as to require some care on the part of the defendant for the safety of the deceased. He was not a trespasser, but was upon the defendant's tracks by its invitation. It had induced him to believe that that was the proper place for him to cross, that he had some right there. He was a licensee at that place if nothing more, and the defendant knew that he, with many others, would cross there at that time on their way to work. *Barry* v. *Railroad Co.*, 92 N. Y., 289 ; *Sweeney* v. *Railroad Co.*, 10 Allen, 368, 375, 376 ; *Murphy* v. *B. & A. R. R. Co.*, 133 Mass., 121 ; *Chenery* v. *Fitchburg R. R. Co.*, 160 id., 211 ; 4 Amer. & Eng. Ency. of Law, 915, § 10 and notes.

The conduct of the defendant under the circumstances disclosed by the finding, was clearly negligent. *Brown* v. *N. Y. C. R. R. Co.*, 32 N. Y., 597 ; *Ferguson* v. *Wisconsin, etc., R. R. Co.*, 63 Wis., 145 ; *French* v. *Taunton, etc., R. R. Co.*, 116 Mass., 537 ; *Howard* v. *St. Paul, etc., R. R. Co.*, 32 Minn.,

214; *Penn. R. R. Co.* v. *State*, 61 Md., 108; *Grethen* v. *Chicago, etc., R. R. Co*, 19 Amer. & Eng. R. Cases, 342.

Contributory negligence is a question of fact, and the trial court found that the deceased was entirely free from it. But here again, if this court will review that question, other facts found show that this conclusion is warranted. *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn., 475; *Bates* v. *N. Y. & N. E. R. R. Co.*, 60 id., 269; *Sutton* v. *Vernon*, 62 id., 1, 9; *Beisiegel* v. *N. Y. Cent. R. R. Co.*, 34 N. Y., 622, 627.

TORRANCE, J. This is an action brought to recover damages for injuries claimed to have been inflicted by the defendant upon the plaintiff's intestate, causing his death. The court below, upon the facts found, rendered judgment for the plaintiff, and the defendant appealed.

The following is the substance of the finding:—The intesrate, Germaio Pomponio, was, when injured, working for Holmes, Booth and Hayden, a corporation, in Waterbury. The shops of said corporation are located upon both sides of the defendant's railroad, and extend for a considerable distance parallel with it. Germaio was employed in that portion of the works lying easterly of the tracks, and on the 30th of May, 1892, a few minutes before one o'clock in the afternoon, he was returning to his work, and in doing so was passing over the tracks of the defendant's railroad, at a crossing leading from one of the streets in Waterbury to one of the two regular entrances to the easterly portion of the works of his employer. On both sides of this crossing was a wooden gate and a house for a gate-tender, belonging to and maintained by Holmes, Booth and Hayden. This crossing was regularly prepared for the purpose of access to said works, and was regularly used by three or four hundred of the employees in going to and from their work, as well as by teams and others having business with said corporation. It was the rule of said corporation that these employees should go through the gate at the easterly terminus of this crossing, in going to and returning from their work. None others than said employees, and those having business with the cor-

poration, were permitted to enter at said entrance, without a pass obtained from the office.

This crossing has been thus maintained and used for over thirty years, and said use has always been open, notorious and well known to all the world and to the defendant. During all this period the defendant has kept this crossing planked and in condition for travel to said shops, and the planking for such purpose has generally been furnished by the defendant, but at times by said corporation. The layout of defendant's road in 1848, antedated by a few years the erection of these shops and the establishment of this crossing.

It was well known to the defendant that at a few minutes before the morning starting, at the noon closing, the one P. M. starting, and the evening closing hours, the employees of said works passed in or out in large numbers over this crossing, while during the other hours of the day it was comparatively little used. South of the crossing were two side tracks, used principally for the storage of cars for the shops. Thirty-four feet north of the crossing was the south end of an iron truss bridge of the defendant, over the Naugatuck River. It was $105\frac{1}{2}$ feet long, its main trusses were 24 inches wide, its overhead supports were of iron of the various sizes usual in such a bridge, and it was not otherwise inclosed.

The defendant was accustomed to switch over this crossing from its freight yard north of the bridge, in order to place its cars on the side tracks south of the crossing. In switching cars upon the more northerly of the two sidings, flying switches were customarily made. This switching could only be done during the intervals between the passing of regular trains, and one of these intervals was between 11:15 A. M. and 1:10. P. M. At the time Germaio was injured the defendant was making a flying-switch over this crossing, in order to put a box car from the freight yard onto one of the two side tracks south of the crossing. Said car, having been got under headway, was, near the north end of the bridge, cut off from the engine, which then sped on, at about twelve or fifteen miles an hour, until it passed the crossing, and the switch about 150 feet south of the crossing.

Upon the engine were the engineer and fireman in the cab, the yard conductor on the forward foot board, and two brakemen on the rear foot board of the tender. Upon the box car which followed some distance behind, and which was upon the bridge when the engine passed the crossing, was a single brakeman, on top of the car at the rear, where the brake was. As the engine approached the crossing the whistle was blown and the bell rung, and Germaio, and Loughlin, a fellow workman, observed its approach, and halted for it to pass at a distance of between six and fifteen feet from the tracks. After it had passed Loughlin looked up and down the track. He did not see the car coming, being prevented from doing so, either by the bridge or by escaping steam, smoke or flying dust, or both combined, and proceeded on his way. Germaio advanced at the same time. As they were upon the planking between the tracks, the silently advancing car, going at the rate of from six to eight miles an hour, struck both Loughlin and Germaio, causing the latter the injuries from which he died a few days later.

It did not appear in evidence that any one observed, or was in a position to observe, Germaio, to see whether or not he looked up the track before starting to cross, after the engine passed, and there was no direct evidence upon this point. As the engine passed the deceased none of the men upon it gave any warning of the approaching car, or did anything to attract his attention to it. When the brakeman upon the box car saw that an accident was imminent, he shouted, but was not heard by the crossers, as the circumstances rendered it little probable that he would be, or that if heard, the intended warning would be of any avail. He also began to apply the brake, but with no effect in diminishing the speed of the car until the accident occurred.

When Germaio started across the tracks, after the engine passed him, the box car was somewhere on the bridge, and it was more or less concealed from his view by the bridge. From any point in the line of said crossing, between defendant's west rail and the gate house, the view to the northward was unobstructed save by the bridge, and standing in said

line within a distance of five feet from said rail, one had a clear view through the bridge. Between six and eight or nine feet from said rail, the trusses and supports of the bridge seriously interfered with the view of objects on the bridge, so that a box car upon it "would be largely obscured from sight." At no point, however, would such a car be wholly hidden from sight.

The finding concludes thus: "I find from the evidence as follows: (a) That the deceased was upon the crossing at the time of the accident by the implied invitation of the defendant. (b) That the defendant failed to exercise due and reasonable care towards the deceased in the premises, and was negligent towards him, whereby he received his injuries. (c) That the defendant failed in its duty to the deceased, and did not exercise reasonable care for his safety under the circumstances, although he was upon said crossing as a mere licensee only, and that the defendant was therefore guilty of negligence, directly causing said injuries to the deceased. (d) That the deceased did not at the time of the accident fail to make reasonable use of his senses, and did not, by such failure or otherwise in any manner by his own negligence or want of care, contribute to his injury."

Upon the trial below the defendant claimed that the deceased was upon the crossing as a mere licensee; that the defendant at the time owed to him no duty as such licensee; that the defendant was not guilty of negligence; that the deceased was guilty of contributory negligence; and that judgment should be rendered for nominal damages only. The court rendered judgment for substantial damages.

The defendant claims that the court below, upon the facts found, erred in holding it guilty of negligence towards the decedent; and also in holding that the decedent was not guilty of contributory negligence. We think the question involved in this last claim, as to the contributory negligence of the decedent, is disposed of by the finding as one of fact, and is not open to review upon this appeal.

The general question whether the decedent was guilty of contributory negligence, involves these two subordinate ques-

tions: first, what was the nature and extent of the duty to
avoid injury resting upon the decedent under the circum-
stances; second, did he fully perform that duty.   The first
question is one of law, and is answered by saying that whether
the decedent was upon the crossing as a trespasser, or a
licensee, or was there by implied invitation, it was his duty
to use such measures to advoid danger and injury to himself
as a man of ordinary prudence would have used under the
same circumstances; and this was all the law required of him.
The other question, whether his conduct in avoiding the dan-
gers incident to his situation, was that of a man of ordinary
prudence, is clearly a question of fact to be answered by the
trier from the facts proved by the evidence.   The conclu-
sion of the trier upon this point, if he committed no error
of law in reaching it, is final and cannot be reviewed by this
court upon this appeal.   *Farrell* v. *R. R. Co.*, 60 Conn.,
239.

Now the claim of the defendant, that the court below erred
in holding that the decedent was not guilty of contributory
negligence, may mean that the court erred with reference to
this question of law, or this question of fact, or both.   But
the record does not disclose that the court erred with refer-
ence to either question.   It nowhere appears that it took an
erroneous view of the nature or extent of the decedent's
duty, or that it held him to a duty less in any degree than
the law imposed on him; and it nowhere appears that in com-
ing to the conclusion that he had fully performed his duty,
the court below committed any error of law.   Upon this
part of the case then, the record fails to show that the court
below committed any error of law; and this disposes of the
defendant's claim upon the question of contributory neg-
ligence.

The next question is whether the court erred in holding
that the defendant was guilty of negligence towards the de-
cedent.   Upon this part of the case the questions relate prin-
cipally to the nature and extent of the defendant's duty
towards the decedent, rather than to its performance of that
duty; and the extent of the duty, it is said, depends largely

upon the relation which the parties sustained to each other at the time; that is, whether the decedent was upon the crossing as a licensee, or was there upon the implied invitation of the defendant; and these questions are, upon this record, properly questions of law.

The principle upon which the courts distinguish a case of implied license from one of implied invitation in the technical sense, seems to be this : Speaking generally, where the privilege of user exists for the common interest or mutual advantage of both parties, it will be held to be a case of invitation; but if it exists for the mere pleasure and benefit of the party exercising the privilege, it will be held to be a case of license. Beach on Con. Neg., § 51; Campbell on Neg., §§ 43, 44. "It is sometimes difficult to determine whether the circumstances make a case of invitation, in the technical sense of that word, as used in a larger number of adjudged cases, or only a case of mere license." *Bennett* v. *R. R. Co.*, 102 U. S., 577, 584.

The defendant contends that the decedent was upon the crossing as a mere licensee, and consequently that its duty towards him was a more limited one than if he had been there upon its implied invitation. As a general statement, it is undoubtedly true that an owner in charge of land owes a more limited duty to a mere licensee than he does to a party invited, in the technical sense of that word. A licensee must take the premises as he finds them, and the owner is not, as to him, bound to use care and diligence to keep the premises safe ; while he does owe such a duty to one using his premises upon invitation. "It has often been held that the owner of land or a building, who has it in charge, is bound to be careful and diligent in keeping it safe for those who come there by his invitation, express or implied, but that he owes no such duty to those who come there for their own convenience, or as mere licensees." *Plummer* v. *Dill*, 156 Mass., 426, 427. This distinction between the case of a licensee and that of a party invited, in respect to the duty of keeping the premises safe for their use, is recognized in the following cases and in many others. *Nicholson* v. *Erie Ry.*

*Co.*, 41 N. Y., 525, 532; *Barry* v. *R. R. Co.*, 92 N. Y., 289; *Byrne* v. *R. R. Co.*, 104 N. Y., 362: *Sweeny* v. *R. R. Co.*, 10 Allen, 368; *Gordon* v. *Cummings*, 152 Mass., 513.

But while this is so, it is also true that the landowner must not himself, by what has been called "his own active negligence," injure either the licensee or the party invited, while they are upon his land. This is a duty due to both equally. Towards both, in this respect, he is bound to exercise the same amount of care. Both are upon his premises not as wrongdoers, but by his permission, and in respect to the duty in question, we know of no good reason why the nature and extent of it should not be the same in cases of license as in cases of invitation. In a Massachusetts case, it appeared that the plaintiff, being sent by his mother upon an errand, passed through a passageway upon the defendant's premises, over a portion of which way a roof had been constructed; and that it was the defendant's habit to supply ale to their workmen, who were accustomed to throw the empty ale kegs out of a window down upon this roof, from which from time to time the kegs were taken away. Just as the plaintiff, in going through the passageway, emerged from under this roof, one of the workmen threw a keg so carelessly that it fell off the roof and injured the plaintiff. It was held that the defendants were liable, and that it made no difference whether the way was public, and thus the plaintiff was traveling upon it as a matter of right, or whether it was private and he was traveling upon it merely by permission. The court said: "Even if he were there under a permission which they might at any time revoke, and under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants, which increased the danger of passing and in fact injured him." *Corrigan* v. *Union Sugar Refinery*, 98 Mass., 577.

In another Massachusetts case the court says: "The licensor has, however, no right to create a new danger while the license continues. *Oliver* v. *Worcester*, 102 Mass., 489, 502; *Corrigan* v. *Union Sugar Refinery*, 98 Mass., 577; *Corby* v.

*Hill*, 4 C. B. (N. S.), 556. So a railroad company which allows the public habitually to use a private crossing of its tracks, cannot use active force against a person or vehicle crossing under a license, express or implied." *Stevens* v. *Nichols*, 155 Mass., 472, 475.

In a New York case the court said: " There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to license and permission, by the defendant, to all persons to cross the tracks at this point. These cirumstances imposed a duty upon the defendant in respect of persons using this crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to use such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury. * * * The ground of liability in this case is negligence, and the duty of the defendant to exercise reasonable care, existed irrespective of the fact whether the plaintiff's intestate·had a fixed legal right to cross the track, or was there simply by the defendant's implied permission." *Barry* v. *R. R. Co.*, 92 N. Y., 289, 293.

In this view of the matter we think it makes no difference whether we hold the case at bar to be one of license or invitation; for the duty which the defendant is here charged with violating, is not the duty to keep its premises safe for use, but the duty of using due care not to injure by its own act those rightfully on its premises; and that duty is the same, whether those persons are on the premises as licensees or upon invitation, in the technical sense of that word.

Furthermore, upon the somewhat peculiar and exceptional state of facts disclosed by the record, we think this is a case of invitation, as that word is used in many of the cases, as pointed out in *Plummer* v. *Dill*, 156 Mass., 426, 430. In

that case the court says: " There is a class of cases to which
*Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368,
and *Holmes* v. *Drew*, 151 Mass., 578, belong, which stand on
a ground peculiar to themselves.   They are where the defend-
ant by his conduct has induced the public to use a way in
the belief that it is a street or public way which all have a
right to use, and where they suppose they will be safe.   The
inducement, or implied invitation, in these cases, is not to
come to a place of business fitted up by the defendant for
traffic, to which those only are invited who will come to
do business with the occupant, nor is it to come by permis-
sion, or favor, or license, but it is to come as one of the public
and enjoy a public right, in the enjoyment of which one may
expect to be protected.   The liability in such a case should
be co-extensive with the inducement or implied invitation."

We think the case at bar, *quoad* these work people using
this crossing at the stated hours, is a case of invitation rather
than of license, within the principle laid down in the above
case of *Plummer* v. *Dill* and the cases therein referred to,
and in other cases which might be cited.   See also our own
case of *Crogan* v. *Schiele*, 53 Conn., 186.   But after all,
whether the decedent is to be regarded as a licensee, or as
one invited to use the crossing, is of no practical importance
in this case ; he was certainly either the one or the other, and
the defendant's duty towards him, so for as the present com-
plaint is concerned, was the same in either case ; and upon
the facts found we think the court below was justified in
holding that the defendant failed to perform that duty.

As before intimated the facts in this case are somewhat
peculiar and exceptional.   For more than thirty years the
defendant has kept this crossing planked and in condition
for the use of these three or four hundred work people, and
for the teams of their employer; it was specially prepared
and adapted for this purpose, and practically speaking the
employees were compelled to use it in coming to and going
from their work; it was used during every working day by
three or four hundred people ; it adjoined a public street, and
it was the principal and practically the only entry to the

shops east of the tracks; it was used by these people in crowds at a time at certain stated hours of the day; and all this was well known to the defendant and its servants; the decedent was one of these workmen, and when he was injured he was using the crossing in returning to his work at one of the stated times when it was customary for the employees to use the crossing for such purpose; the defendant was engaged in making what is known as a "flying switch," a dangerous operation anywhere, but more especially over a crossing public or private; and it selected an hour to do this when it might reasonably be anticipated that it would result in injury to some of these people, unless care proportionate to the danger was taken to avoid such a result.

Under these circumstances the defendant was clearly charged with the duty to use reasonable care towards those using this crossing, whether they used it under a license or under an implied invitation; a care proportionate to the danger to be reasonably anticipated from the act done, and reasonably adequate under the circumstances to prevent injury from that act to those who at that time would probably be rightfully using the crossing. *Taylor* v. *R. R. Co.*, 113 Pa. St., 162; *Barry* v. *R. R. Co.*, 92 N. Y., 289; *Byrne* v. *R. R. Co.*, 104 id., 362.

Whether the defendant, at this time, used such care, was in this case, as it ordinarily must be, a question to be determined by the trier as one of fact. The trier decided it against the defendant, and the record does not disclose that in deciding it any error of law was committed, either with respect to the relation which these parties sustained towards each other, or as to the duties which they owed to each other, or as to any other matter.

There is no error.

In this opinion the other judges concurred.