# GLARIA *v.* WASHINGTON SOUTHERN RAILWAY COMPANY.

---

MOTION TO DIRECT VERDICT; RAILROAD; NEGLIGENCE; CONTRIBUTORY NEGLIGENCE; TRESPASSERS; CROSSING.

1. A motion to direct a verdict is an admission of every fact in evidence and of every inference reasonably deducible therefrom; and the motion can be granted only when but one reasonable view can be taken of the evidence and the conclusions therefrom, and that view is utterly opposed to the plaintiff's right to recover.

2. Whenever there is uncertainty as regards the existence of negligence on the one hand, and of contributory negligence on the other, the issue must be submitted to the jury.

3. One of a gang of laborers employed by railway contractors engaged in the construction of new tracks adjoining the track in use under the direction of the railway company's engineers, who is injured by a passing train while crossing the track on a path made by the laborers and used by them for two months, is not a mere trespasser on the track, and as such precluded from recovering damages for his injuries from the company, but is a licensee by implication; and the question of the company's negligence is for the jury. (Distinguishing *Stearman* v. *Baltimore & O. R. Co.* 6 App. D. C. 46, and following *Baltimore & P. R. Co.* v. *Golway,* 6 App. D. C. 143).

4. Where a laborer engaged in railway construction work, while crossing the railway track about dark at a crossing, was struck and injured by a passing train going at a rapid speed, and he testifies that before stepping on the track he looked and listened, and it appears that at the time there was a thick fog, and that there was a curve in the track and an embankment not far up the track in the direction from which the train came, which limited the view of the track, the question of his contributory negligence is for the jury. (Distinguishing *Harten* v. *Brightwood R. Co.* 18 App. D. C. 260.)

No. 1790.   Submitted February 7, 1908.   Decided March 10, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court in an action to recover damages for personal injuries.                                *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action brought by Dominico Glaria against the Washington Southern Railway Company, a corporation engaged in the operation of a railway in the State of Virginia, to recover damages for personal injuries. The evidence introduced by the plaintiff tended to show the following facts: At the time of the injury, November 29, 1904, plaintiff was a laborer employed by a contracting firm which was engaged in constructing a double track for defendant on its line between the city of Washington and Quantico, in the State of Vir-

ginia.   The contractors were working from south to north, and
had, on and before the date aforesaid, reached a point about
100 or 150 feet south of Franconia Station.   A cut was being
made by the contractors in which about sixty-five Italian labor-
ers, of whom plaintiff was one, were employed.   They were
using a steam shovel adjoining and on the east side of the sin-
gle track over which trains were being operated.   The railway
track, curving just above the point, ran on a down grade and
along a bank about 8 feet above the level of the excavation.
A high bank rose above the track level, which, with the curve
before mentioned, prevented a train coming south from being
seen more than 100 yards away on a clear day.   A path on
the west side of the track, between 2 and 3 feet wide, led through
the woods to the "shanty" where the laborers lodged, about 1
mile distant.   The men were walking on that path and across
the track sometimes ten or twelve hours a day.   Plaintiff had
been working with the steam shovel for about two months in the
cut.   About 150 feet north of Franconia Station there was a
bridge over the railway, and at the station a road crossed the
track.   Where the work was going on, a pathway had been fixed
by the men on both sides of the track.   The bank on the west
ran down gradually on each side of the path, being low at
the path and rising on each side, making a kind of a cut.   The
laborers made the path solid on the west side by putting down
two ties.   On the east side, they had cut steps in the bank,
which was sloping, to enable them to climb up from the bottom
of the cut on that side.   The path was sometimes used during
the day to get wood from the west side of the track.   The ex-
cavation made by the steam shovel varied in depth from 30
feet to 9 feet.   On the day of the accident the bank north of
the shovel was 9 feet high.   The track used by the railway was
a temporary track, and the excavation was made for a double
track.   There was no pathway on the east side of the cut.
There was a space between the ends of ties on the company's
track and the edge of the bank of the cut where the steps were,
of about 2 feet.   There was a narrow-guage or "dinky" track
on the east side of the cut, which extended to Franconia Station,

and was not in use when the steam shovel stopped work for the day. The steam shovel when in operation moved ordinarily at the rate of 4 to 6 yards per day towards the station. It had been standing at the point where the accident occurred about a week. Sometimes it worked three or four hours a day, and sometimes stopped for two or three weeks. As the steam shovel worked, the men constructed the path on the east side to connect with the path on the west side, and made the steps in the bank to go up the same. The general public crossed at the station, and did not use the laborers' path. This path was not only used by the laborers to cross on, but also to bring materials that had been piled on the west side of the track. The foreman of the railway company's track gang, and his men, were working every day on the track, keeping it up as it was sinking, and used this path. Defendant's engineers were there every day while the path was in use, and the superintendent once or twice a week. No warning was given not to use the path or crossing, and no notice was put up. The ground was wet and muddy, and the men constructed a kind of dry path leading to the bank where the steps were.

On November 29, 1904, plaintiff quit work about 5:35 P. M., and shortly thereafter started to go to the "shanty." He walked up the steps, stopped, and looked up and down the track, and listened as usual. The night was foggy and misty. He could not see Franconia Station. Not seeing or hearing anything, he started to cross, and, putting one foot on the track, was struck by an express train, which had not stopped at Franconia Station, and was running fast. He was dragged a little distance, and his left leg was run over. A witness for plaintiff, who worked in the steam shovel, saw the train pass at a rate of about 20 miles an hour, which was reduced speed on account of the temporary track. It was necessary to reduce speed on account of the poor condition of the track. That the cut where the shovel worked was very wet and soft and it was necessary to cross the track to get out of the cut. The train was passenger train No. 403, which did not stop at Franconia Station.

The contract between defendant and plaintiff's employers was

read in evidence. Their work was to be done in accordance with specifications and under the direction of defendant's engineer. Materials and timber procured on defendant's property were to be deposited at places designated by defendant. The work was to be done so as not to interfere with the passage of trains. Contractors were not permitted to transport material in carts or wheelbarrows along or between tracks. The contract also contained this clause:

"Strict discipline and order among the workmen, both while on and off the line, must be enforced by the contractor, who shall discharge from the work any person in his employ, upon the requisition of the engineer. The contractor undertakes to make good any injury to lands, stock, or tenements from any cause under his control; and further undertakes to save harmless the party of the second part for personal injury or other damage incident to or arising out of the execution of his contract."

At the conclusion of this evidence, the court, on motion of defendant, directed the jury to return a verdict for it. From the judgment entered thereon plaintiff has appealed.

*Mr. Leonard J. Mather* and *Mr. H. J. Sweeney* for the appellant.

*Mr. Frederic D. McKenney* and *Mr. John S. Flannery* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

A motion to direct a verdict is an admission of every fact in evidence, and of every inference reasonably deducible therefrom. And the motion can be granted only when but one reasonable view can be taken of the evidence and the conclusions therefrom, and that view is utterly opposed to the plaintiff's right to recover in the case. Whenever there is uncertainty as regards the existence of negligence on the one hand, and of

contributory negligence on the other, the issue must be submitted to the determination of the jury. These principles are so familiar that it is unnecessary to cite authority for them. The record does not disclose whether the motion was sustained on the insufficiency of the plaintiff's evidence, as matter of law, to show negligence on the part of the defendant, or upon the ground that it plainly shows that plaintiff's injury was the result of his contributory negligence. Both propositions have been maintained in support of the judgment.

The question on the first ground depends upon the proposition that the plaintiff was a mere trespasser upon defendant's track, at a place where his crossing could not reasonably have been expected. If this be a sound proposition, the court did not err in directing the verdict. *Stearman* v. *Baltimore & O. R. Co.* 6 App. D. C. 46, 54. The defendant's agents in charge of the train were under no duty to look out for mere trespassers upon the track at unexpected places, and owed the plaintiff, as such, no other duty than to avoid injuring him unnecessarily in case of the discovery of his danger. But we cannot concur in the view that, under the evidence, the plaintiff was such a trespasser. He was not a mere stranger undertaking to use the railway track as a roadway, or to cross it at an unusual place. He was in the service of defendant's contractor, and as such required to work in the construction of the new tracks adjacent to the one in use. The evidence tends to show that the numerous laborers in the same service had been accustomed to cross the track at the same place because there was no other direct and convenient way to go to and fro between their quarters and the place of their special employment. It tends to show that the path used by them on the west side of the track had been in use about two months, that a dry path had been made in the wet ground of the cut where the steam shovel was worked, and steps cut in the bank so that the other path could be reached by crossing the track. The laborers passed and repassed frequently during the working hours of the day, and sometimes brought materials over it. This use was within the daily observation of the defendant's engineers, under whose

direction the work had been carried on, as well as under the less frequent observation of the railway superintendent. It tends to show that defendant's track foreman and his gang worked daily on the track at and near the place, and sometimes used the path and crossing. No objection had been made by defendant to this use by the laborers of the contractor, and no notice had been given to discontinue it.

Aside from the actual knowledge by the engineers and superintendent of the defendant, of this use of the crossing, the evidence of its general use for about two months might have authorized the jury to infer that the defendant had knowledge. It may be inferred from these facts that the plaintiff was not a mere trespasser, but a licensee by implication. The law makes a difference between the duty of the railway to such licensees, and the duty to mere trespassers, or to those who make occasional use of a railway track as a walk or a crossing at their convenience because it happens to be unfenced and unguarded. Having permitted the use of the crossing by plaintiff and his co-laborers for about two months without objection, and having cause, therefore, to anticipate its continuance until the completion of the work, it was the duty of the defendant to exercise care commensurate with the circumstances, to avoid injuring them. *Baltimore & P. R. Co.* v. *Golway,* 6 App. D. C. 143, 166; *Clampit* v. *Chicago, St. P. & K. C. R. Co.* 84 Iowa, 71, 74, 50 N. W. 673; *Byrne* v. *New York C. & H. R. R. Co.* 104 N. Y. 362, 366, 58 Am. Rep. 512, 10 N. E. 539; *Swift* v. *Staten Island Rapid Transit R. Co.* 123 N. Y. 645, 25 N. E. 378; *Chesapeake & O. R. Co.* v. *Rodgers,* 100 Va. 324, 333, 41 S. E. 732; *Pomponio* v. *New York, N. H. & H. R. Co.* 66 Conn. 528, 537, 32 L.R.A. 530, 50 Am. St. Rep. 124, 34 Atl. 491; *Tutt* v. *Illinois C. R. Co.* 44 C. C. A. 320, 104 Fed. 741, 744; *Inter-State Consol. Rapid Transit R. Co.* v. *Fox,* 41 Kan. 715, 720, 21 Pac. 797.

Under this view of the law applicable to the evidence, we think that the question of defendant's negligence was one that ought to have been submitted to the jury.

We come now to the consideration of the question of plain-

tiff's contributory negligence as matter of law. The evidence bearing on this proposition tended to show that it was about dark when plaintiff, immediately after his work had ceased, undertook to cross the track on his way to his quarters. That there was a thick fog which added to the obscurity. That there was a curve and bank not far up the track in the direction from which the train came, which limited the view of the track under ordinary conditions. Plaintiff testified positively that when he went up the steps to the edge of the track he paused, looked both ways, and listened; and that, neither seeing nor hearing the approaching train, he stepped upon the track and was immediately struck down by a train moving rapidly. It is true that where the undoubted facts and circumstances in evidence clearly show that one about to cross a railway track must inevitably have seen a coming car or train if he had actually looked in its direction, the testimony of the injured party that he looked and failed to see it coming may be rejected, and his contributory negligence declared as matter of law notwithstanding. *Harten* v. *Brightwood R. Co.* 18 App. D. C. 260, 263; *Northern P. R. Co.* v. *Freeman,* 174 U. S. 379, 384, 43 L. ed. 1014, 1016, 19 Sup. Ct. Rep. 763; *Northern C. R. Co.* v. *Medairy,* 86 Md. 168, 173, 37 Atl. 796; *Reidel* v. *Philadelphia, W. & B. R. Co.* 87 Md. 153, 159, 67 Am. St. Rep. 328, 39 Atl. 507. There was no uncertainty in regard to those circumstances in the cases cited. In *Harten* v. *Brightwood R. Co.* supra, it was said: "The track was practically straight and wholly unobstructed for several hundred yards. One looking up the track for the coming car could not fail to see it, and it was not possible for the car to traverse the space along which it was clearly visible, between the time the plaintiff looked for it as she passed from one track to the other, and the moment when she stepped upon the rail and was struck by the fender attached to the front of the car." The car in that case was a street car on a suburban line, and the injury occurred about 10 o'clock in the morning of a clear day.

The circumstances in evidence in the case at bar are different, and while it may seem unlikely that the plaintiff could,

in fact, have paused and looked and listened, with ordinary care, without seeing or hearing the coming train, it cannot be justly assumed, with the requisite certainty, that he must have seen or heard it had he done so.

In the absence of such certainty the question of his contributory negligence was one for the determination of the jury.

It was error to direct the return of the verdict for the defendant, and the judgment must be reversed, with costs, and the case remanded for another trial. *Reversed.*