JAMES B. GEOGHEGAN *vs.* G. FOX AND COMPANY, INC.

First Judicial District, Hartford, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and BANKS, JS.

Such extensions of the principle of *respondeat superior* as the courts of this and other States have been led to adopt in order to meet the increasing complexity of modern industrial and commercial conditions, relate to the question of the legal responsibility of a person for the acts of the servants or agents through whom he sees fit to manage his affairs; they do not, as claimed by the plaintiff in the present case, have the effect of singling out certain classes of business or other undertakings and of imposing upon those who conduct them a differing or higher standard of care.

One who enters a store for any of the purposes for which it is adapted and prepared, becomes an invitee, and the owner owes to him the duty to maintain the premises in a reasonably safe condition and to exercise due care to avoid injuring him.

Due care is the care required under all the surrounding circumstances and, in a given situation, it may mean great care.

The phrase "active negligence," occasionally used with reference to the conduct of an owner toward an invitee, is not recognized in this State as a degree of negligence or as a standard of care by which the liability of the owner is to be determined; it denotes merely some positive act on his part, or some failure in duty which is the equivalent of a positive act.

A person is charged with knowledge of conditions which he can observe by the ordinary use of his senses, whether or not he in fact observes them.

In the present case, the trial court found that, after the plaintiff had made a purchase in the rear of the defendant's department store, he started toward the front door in order to keep an appointment with his wife and to catch a trolley-car, and that, intent upon these purposes, he did not notice, as he walked at a rapid pace along an aisle lined with counters, that a clerk was stepping out from behind the counter on his right through a small opening or passageway therein, directly into his path; and that as a result of the failure of either to observe the approach of the other, they collided and the plaintiff, in his efforts to save himself from falling, struck a table in the center of the aisle and severely injured his shoulder. The trial court rendered judgment for the defendant. *Held* that the trial court did not err, since the subordinate facts supported its conclusions that the conduct of the defendant's clerk was not negligent and that the plaintiff himself was guilty of contributory negligence.

Argued January 8th—decided February 23d, 1926.

ACTION to recover damages for personal injuries, alleged to have been caused by the negligence of the defendant's servant, brought to the Superior Court in Hartford County and tried to the court, *Simpson, J.;* judgment for defendant, and appeal by plaintiff. *No error.*

The plaintiff's complaint alleges that a servant of defendant, acting in the line of her duty, negligently tripped plaintiff while, in the exercise of due care, he was walking on the main floor of defendant's store, from the rear of the store to the front entrance, whereby he was severely injured. All of the material allegations of the complaint are put in issue. The

trial court found that defendant conducts a large department store in Hartford, and that plaintiff made a purchase in the rear of the store, and started to walk down an aisle to the front door on Main Street. This aisle was paved with marble slabs; there were counters running along on its right-hand side, and in the center of the aisle, midway between these counters and similar counters on the left-hand side, were rectangular tables on which merchandise was displayed; the store was brightly lighted by electric lights. At the time the plaintiff was walking in the aisle, there were two young women employed as clerks by the defendant, who were behind a counter on the right side of the aisle; there were no customers at this counter at the time in question. The counter on plaintiff's right was separated at one point by a small opening or passageway leading from behind that counter to the aisle along which plaintiff was walking. The plaintiff was walking rapidly along the aisle, intent on meeting his wife at her place of employment a short distance from the defendant's store, and then catching a 6.07 p. m. trolley-car at the City Hall Station, which is about two minutes walk from defendant's store. As the plaintiff reached the point where the passageway separated the counter on his right, one of the defendant's women clerks, closely followed by another woman clerk, stepped out into the aisle along which the plaintiff was walking, and each collided with the other.

As a result of the collision, the plaintiff lost his balance, and to keep from falling to the floor, reached out and grabbed the table on his left with his right hand, and his left shoulder struck the corner of the table. Each apologized to the other and inquired whether any injury had resulted, and each replied in the negative. The plaintiff stated that he was in a

hurry to catch a trolley-car and went along without further comment. Each party was in a position to see the other before coming into collision with each other, but neither saw the other until they came together. Either party could have prevented the collision had either noticed the approach of the other. There was no physical obstruction to either the plaintiff or the clerk which prevented either from seeing the approach of the other. The injury aforesaid occurred about 5.55 o'clock in the afternoon, or about five minutes before the customary time for closing of the department store to the general public. As a result of the contact between plaintiff's shoulder and the corner of the table, as aforesaid, the plaintiff suffered a severe injury to his left shoulder.

The following conclusions were reached by the court: "(1) that plaintiff's injuries were the result of an accidental collision between himself and one of defendant's servants, for which the defendant was in no way responsible; (2) that plaintiff has failed to prove the alleged negligence of defendant's servant; (3) that the plaintiff had not proven by a fair preponderance of the evidence that the injury of which he complained was caused solely by the negligence of the defendant as alleged and without any negligence on the part of the plaintiff materially or essentially contributing to his injury."

The plaintiff claimed that he was an invited guest in the defendant's store, and that the defendant was bound to use a high degree of care to protect the plaintiff from injury; that upon the facts found defendant's servant was negligent, and that the plaintiff was free from negligence. In his reasons of appeal plaintiff assigns as error in substance the overruling of these claims.

*Josiah H. Peck,* with whom was *Isidor E. Finkelstein,* for the appellant (plaintiff).

*Joseph F. Berry,* for the appellee (defendant).

KEELER, J.  The appellant contends that the nature of a department store is such that owing to certain risks consequent upon its character, equipment and management, its owner is charged with a higher standard of care in his conduct of the same than in the pursuance of ordinary business operations, and that in law he is charged with the same responsibility toward persons entering his establishment, invited thereto for the transaction of business, as are carriers and inn-keepers, that is, that a standard of care differing in kind as well as in degree obtains in such a case.  In support of this claim he cites *Wolf* v. *Sulik,* 93 Conn. 431, 106 Atl. 443, in which it is held that by the exigencies of the conduct of present day business affairs, the doctrine of *respondeat superior* has been so extended as to bind any one who prefers to manage his affairs through others, "to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority."  Many cases from other jurisdictions are cited to the same effect.  But it at once appears that all of them are concerned with a logical and necessary extension of the doctrine of vicarious liability, beyond that which obtained in former times and under simpler industrial and commercial conditions.  This is not to place any given business or undertaking into a class by itself, establishing a differing or higher standard of care.  Liability is one thing, the standard of care is another.  They are confused in the claim of the plaintiff.  We have been asked to adopt the doc-

trine of a higher and different standard of care in cases relating to the conduct of places of public amusement, and have refused. In such cases we have uniformly held that the place where the business is conducted, its structure and equipment, must be kept in a reasonably safe condition, and that those who resort thereto should be protected, and that those who are concerned with the operations involved in the conduct of the concern and its management should exhibit due care. Due care in such a case is care proportioned to the nature of the instrumentalities involved and the circumstances ordinarily attendant. Due care may in any given case mean great care; the care is always to be proportionate to attendant requirements and hazard. *Turgeon* v. *Connecticut Co.,* 84 Conn. 538, 80 Atl. 714; *Glynn* v. *Lyceum Theatre Co.,* 87 Conn. 237, 87 Atl. 796; *Bernier* v. *Woodstock Agricultural Soc.,* 88 Conn. 558, 92 Atl. 160; *Godfrey* v. *Connecticut Co.,* 98 Conn. 63, 118 Atl. 446; *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 120 Atl. 300.

In the instant case, the plaintiff was an invitee. In *Sweeney* v. *Old Colony & Newport R. Co.,* 92 Mass. (10 Allen) 368, 373, a leading case largely followed and frequently cited, the rule is laid down "that an owner or occupant is bound to keep his premises in a safe . . . condition for those who come upon and pass over them, using due care, if he has held out any invitation, allurement and inducement, either express or implied, by which they have been led to enter thereon" and to make use thereof in accordance with the intention and design with which the place was adapted and prepared to be used. The opinion states the duty to be to keep the premises in a safe condition; in a reasonably safe condition is the rule of duty we require toward the invitee. A department store is clearly a place to which the public is invited and

induced to enter and its allurements are manifest and striking. In *Pomponio* v. *New York, N. H. & H. R. Co.*, 66 Conn. 528, 538, 34 Atl. 491, we adopted this rule, and said that the invitor must not, "by his own active negligence," injure the invitee while the latter is upon invitor's property. The use of the phrase "active negligence" has unfortunately not always accorded with clarity of reasoning, in that it has been used as if thereby a new degree of negligence had been recognized and thus the rule of Lord Holt, not recognized in this State, had been adopted. We have explained the true meaning of this phrase in *Dickerson* v. *Connecticut Co.*, 98 Conn. 87, 92, 118 Atl. 518, as denoting some positive act of a defendant, or some failure in a duty of operation which is the equivalent of a positive act; and in the opinion (p. 91) it is further stated that the use of the phrase does not adopt "for the owner a rule of liability based upon a standard other than the failure to exercise due care."

In the case before us, then, the defendant was bound to exercise reasonable care to have the place wherein it transacted business safely constructed, and to exercise due care in its operation, an operation conditioned by any possibilities or dangers peculiar to its use. As we have before stated, this care in operation may at any given time, or in any given situation, imply a high degree of care. The amount and degree of care, then, to be exercised by the defendant's saleswoman for whose negligence, in the scope of her employment and also in any act furthering the business of her employer, the latter was responsible, is a question of fact to be determined by the trier. No claim is made that the arrangement of counters and of tables in the aisle between the same was a dangerous one, and openings at intervals in a long counter extending the length of a large store are usual, and it might be

said necessary for the convenient dispatch of business. The store was brightly lighted. We are therefore concerned with the conduct only of the plaintiff and defendant, having regard to the physical arrangements above noted.

The trial court has found that plaintiff has failed to prove the negligence of the saleswoman. To come out from behind the portion of the counter of which she was in charge and go for a time elsewhere, was undoubtedly a frequent, necessary and ordinary course of conduct. Such movements would ordinarily be made in the scope of her employment and in furtherance of the interest of her employer. We may fairly infer, in the absence of anything in the finding to the contrary, that her movement just preceding the collision was of this character. She of course knew that in the passing to and fro of employees and customers of the store, with the aisles sometimes crowded, more or less contact of one person with another, ranging from slight shoving to collisions of some violence, were not infrequent, and in most cases a matter of course and not productive of harm, but with the possibility of serious harm. The court has found that she might have seen the plaintiff so far as any obstacle to sight was concerned, and might have avoided a collision had she seen him. The question of her negligence involves the care she should have exhibited in observing the condition of the aisle as she emerged therein. In view of the possibility of coming in forcible contact with someone else, what precaution on her part constituted a proper degree of care when entering the aisle? Was she required to stop at the opening in the counter, look each way and be sure that there was no one so near her in the aisle that contact was likely which would produce injury, or was she entitled from her own experience and the

general experience of the public to conclude that, although some contact was quite probable, it was not likely to have serious results? Was she also entitled to believe that any person proceeding along the aisle was not going with such rapidity that contact would injure neither him nor her? In determining the proper degree and sort of care which she should have exercised, her duty would clearly be to avoid any contact likely to be injurious, not to avoid any contact at all. The latter was likely to occur many times a day. She clearly had a right, then, to consider the consequences of contact as determining a reasonable and careful course of conduct, rather than the mere possibility of contact. If she was never to come from behind her counter unless she was sure she would not brush up against someone, her effectiveness as a saleswoman would have been materially impaired. Was she required to anticipate that someone would pass along the aisle at such an accelerated gait, that contact with him would injure him? It is alleged in the complaint that defendant's clerk tripped the plaintiff when she entered the aisle. The trial court has not so found. Plaintiff urges in his brief that he had a right to believe that an employee of the store would not suddenly project herself into the aisle without looking to see who was coming. The court has not found that the woman suddenly projected herself. All the sudden projecting appearing in the record seems to have been performed by the plaintiff. Whether the woman exhibited the proper degree of care was a conclusion of fact to be drawn by the trier upon the subordinate facts appearing in the case. We cannot say that the conclusion of the court as to negligence of the defendant is not supported by the facts found, or is unreasonably, illogically or illegally drawn.

Turning to the conduct of the plaintiff, it is found that he made a purchase at the rear of the store, and then proceeded along the aisle toward the door walking rapidly in order to meet his wife in time to catch a certain trolley-car, which departed in a short time from the City Hall Station, and he so told the saleswoman when apologizing for his part in the collision. Before that instant he had not seen the woman, although there was no physical reason why he should not have seen her, and had he seen her, he might have avoided a collision. It was the duty of the plaintiff to be watchful of his surroundings. He had had abundant opportunity to observe the arrangement of the counters, the fact that at intervals there were openings therein for the entrance and exit of those serving behind them, and that tables for the display of merchandise were grouped in the aisle between the counters, thus lessening the available room for passage. These features were so apparent, that whether or not he in fact observed them, he is charged with knowledge of what he should have observed by the ordinary use of his senses; *Nehring* v. *Connecticut Co.,* 86 Conn. 109, 123, 84 Atl. 301, 524; *Seabridge* v. *Poli,* 98 Conn. 297, 301, 119 Atl. 214. It was his duty to be watchful of these surroundings and to use ordinary care to avoid any danger likely to occur in the customary use of the premises. He would certainly be charged with knowledge that he might meet persons crossing the aisle from one side to the other between the tables, and equally so to consider that the counter openings were made for use and likely to be used at any moment. Like any sensible person he would know that if he walked at a moderate and deliberate pace along the aisle, while he might brush up against some persons, the contact would not be likely to injure him or them. When he proceeded to walk rapidly,

he must have known that the risk of danger from contact with others was materially increased, and his vigilance should have increased. Yet the court finds that he did not see the saleswoman, although he might have seen her in time to avoid a collision. He was going so fast that his contact with her caused him to lose his balance, and he was obliged to grab a table to keep from falling. This indicates a gait of decided rapidity. It is not found that the saleswoman was upset or lost her balance, as probably would have been the case if she also had been proceeding rapidly. In drawing the conclusion that plaintiff had not proven by a fair preponderance of evidence that his injury was caused solely by the negligence of defendant's employee, the trial court was justified by the facts found.

There is no error.

In this opinion the other judges concurred.