TUTT v. ILLINOIS CENT. R. CO.

(Circuit Court of Appeals, Sixth Circuit. November 7, 1900.)

No. 809.

1. RAILROADS—INJURY TO PERSONS ON TRACK—LICENSEES AND TRESPASSERS.
    A railroad company owes no duty to mere trespassers upon its tracks, except to avoid unnecessary injury to them after they are discovered on the premises; but where there exists a license to the public to go upon or across the tracks at a particular place, either express or implied, the com-

pany is bound to use reasonable care to avoid injury to those whose presence there it may reasonably anticipate.

2. SAME—IMPLIED LICENSE—QUESTION FOR JURY.

Plaintiff, a child 6 years old, was run against and injured by cars being switched in the yards of defendant railroad company while he was crossing the tracks. There was no public crossing at the place of injury, but it was in a thickly populated part of a city, the tracks were not fenced, and no watchman or warning signs were maintained; and testimony was introduced by plaintiff tending to show that the place had long been used by children and others in crossing to and from a canal beyond, where boats passed and sometimes stopped. It was for that purpose that plaintiff had crossed the tracks with an older sister, and he was returning when injured. There was also evidence which made it a question of fact whether defendant was guilty of negligence in the operation of the train, which would render it liable for the injury, provided plaintiff was not a trespasser. *Held,* that notwithstanding evidence that defendant had instructed its employés to keep persons away from the tracks, and that children had several times been driven away, it was a question of fact for the jury whether, under all the circumstances, plaintiff was there under an implied license which imposed upon defendant the duty of exercising care to discover his presence and avoid his injury.

In Error to the Circuit Court of the United States for the District of Kentucky.

From the petition and the various amendments thereof, we gather the plaintiff's cause of action to be based upon the following allegations: Plaintiff was an infant 6 years of age, and on the 20th day of January, 1898, while crossing certain tracks of the defendant company at a point in the city of Louisville, west of Twelfth street, between said street and Thirteenth street, by the backing of a train of cars upon and against the plaintiff, through the gross carelessness of the defendant and its agents, plaintiff was thrown down and severely injured. The tracks at the place of injury were left open and uninclosed, and this in a thickly-settled neighborhood, where many children of tender years are attracted by boats passing on a near-by canal. That plaintiff, being attracted by childish curiosity, went upon and across said tracks. That the place aforesaid, at the time of the injury, and for many years prior thereto, with the knowledge and consent of the company, had been used by persons passing to and from said canal and other places. The company pleaded the general issue, and also alleged that the accident resulted from contributory negligence of plaintiff. The testimony tended to establish on the part of the plaintiff that the injury happened between Twelfth and Thirteenth streets, at a point in the yard of the defendant company where there are a number of tracks, perhaps 10, running about parallel. North of these tracks the Louisville & Portland Canal is situated, there being a tract between the northern tracks and the canal of 50 or 60 feet in width. Opposite this point, boats are frequently passing, and sometimes stop. Two tracks lie to the north of the track upon which the injury was received. At the time of the injury, plaintiff, a little over 6 years of age, and a sister, 9 years of age, had crossed over the tracks with a view to going to the canal to see a boat, and were returning when the boy was hurt. The sister, preceding the plaintiff, had crossed over the north track of the defendant company; and the plaintiff, when about to leave the track on the south side thereof, in the attempt to cross was caught between two cars, thrown down and severely injured, resulting in the loss of a leg. At the time, the defendant company was placing a number of cars on a certain delivery track, upon which track were standing, nearest the approaching train, two cars, then an open space, beyond which were three other cars. Fourteen cars were being pushed in on this track, without signal or warning, and without a brakeman upon or near the front end of the train, and were pushed against the three cars, in the operation running upon the plaintiff in the manner stated. Plaintiff's testimony also tended to show: That children had frequently passed over this part of the tracks in the yard, attracted by the boats passing through the canal. Not only

children, but others, were in the habit of passing there. That this passageway had been used before the tracks were constructed, and that the use continued thereafter. There is no fence or barrier of any kind separating the tracks from High street, where plaintiff lived; being a short distance south of the tracks. That section of the city is thickly populated. There is no sign or warning against trespassing. Children and grown people were accustomed to pass over that part of the tracks and yards in considerable numbers nearly every day. There was no watchman in the yard for the purpose of keeping people out, or warning them against approaching trains. On the part of the company, testimony was introduced tending to show: That there was no particular path crossing the yards. No business was transacted upon the canal bank. People go there to observe the passing boats. People are not licensed to cross, and orders had frequently been issued to keep people off the tracks and out of the yards. That the children were frequently driven out, but would return; witnesses testifying that "you could not keep them out." That the train at the time of the injury was moving slowly. That the switchman was in his proper place, so as to communicate signals to the engineer. That the switch foreman was on the south side of the train, and could not see the children. That it was not customary, under the circumstances, to keep a brakeman on the front car of an approaching train, though one witness testified in behalf of the defendant that proper management required a brakeman in that position, in order to avoid injury. Upon these issues, and testimony tending to show the facts stated, the circuit court instructed the jury to return a verdict for the defendant, and this action of the court is brought into review here.

Matt O'Doherty, for plaintiff in error.
E. F. Trabue, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

It may be conceded that the railroad company had, as against trespassers, an exclusive right to the occupation and use of its tracks within its yards, as well as of its tracks at other points, and that to persons trespassing it owes no duty, except to avoid injuring them unnecessarily after they are discovered upon the premises. This right is essential to the operations of the company in carrying on its business, and no other or higher duty arises unless the facts show that the person injured is upon the tracks with the express or implied consent of the railroad company. If the person is a licensee, the company is obliged to use reasonable care to avoid injury to one sustaining that relation; the reason of the doctrine being that where the company has the exclusive right to the use of its tracks, and has neither impliedly nor expressly licensed persons to be there, it has no reason to expect them, and consequently is under no obligation to be on the lookout, or to avoid injury to such persons. But where they may be expected to be, and where an implied license has arisen from the conduct of the company, it is bound to use care commensurate with the circumstances to avoid injury to such persons. Whether the circumstances are such in a particular case as to give rise to this implied license is a question to be decided upon the facts as they may arise in each instance. Where it is claimed that no such license has been extended, and but one inference can be reasonably drawn from the circumstances, and that showing the person to be a tres-

passer, the question becomes one of law. Where, however, there is testimony showing that a license, either expressed or implied, arises from the circumstances, the question becomes one of fact, to be submitted under proper instructions to the jury; and the question in this case is, was there such a situation shown as made it clear, as a matter of law, that the boy, at the time of his injury, was a trespasser, or had the circumstances given rise to such an implied license as made the question one to be submitted to the jury? If the boy was a trespasser, there is no testimony in the case to show that he was willfully or wantonly injured. If a trespasser, there arises no higher duty on the part of the railroad company than would result in a like situation towards an adult. We have recently had occasion to examine the doctrine of implied license, and the duty of the employer to the licensee, in the case of Ellsworth v. Metheney (decided by this court Oct. 2, 1900) 104 Fed. 119. In that case we applied the doctrine of this court as laid down by it in the case of Felton v. Aubrey, 20 C. C. A. 436, 74 Fed. 350, to the case then developed. In the Aubrey Case the doctrine of implied license and the duty owing the licensee were very fully examined, and the cases reviewed, in the opinion of the court, given by Judge Lurton. In that opinion it was pointed out that the duty to one crossing the premises of another might be different in a case where the condition of the premises was the only matter complained of, and one where the active conduct of the proprietor upon the premises resulted in injury. In the one case, there being no obligation to put the property in a particular condition because of visitors, and in the other, where persons had been permitted for a considerable time to visit the premises, a duty may arise on the part of the proprietor to refrain from such active conduct as would interfere with the safety of persons who may be expected to be found thereon. The very full examination of the authorities in this connection in Felton v. Aubrey, supra, renders it unnecessary to do more than state the doctrine of that case, and apply it to the developments of the proof herein

"If the evidence shows that the public had for a long time customarily and constantly, openly and notoriously, crossed a railroad track at a place not a public highway, with the knowledge and acquiescence of the company, a license or permission to all persons to cross the tracks at that point may be presumed. Persons availing themselves of such implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence."

It is argued that this doctrine applies only where a definite and fixed crossing has been established, to be likened unto a public crossing. We do not think the doctrine should be thus limited. In the present case, if, in the space between the streets and the land adjacent to the canal, people were continuously crossing without effectual means to prevent them, or proper warnings to desist therefrom, a license may result, and a situation be created where a duty may arise to those who may be expected to be found on the premises. We do not inquire whether the testimony was such as to create this implied license, but whether it was of sufficient

weight to carry that question to the jury. In determining this proposition, the facts must be taken in their most favorable construction to the plaintiff. Here was a place which, the testimony tended to show, had long been used by people and children crossing and recrossing to and from the canal. No attempt has been made to fence against trespassers. No watchmen were on duty. No notices were posted warning trespassers of danger. It is true that there was testimony on the part of the defendant that people, especially children, were driven away, and that the company had instructed employés to keep all such persons off its premises, and upon this proof it is claimed the jury should find that there was no implied license to the plaintiff to cross the tracks. We think, however, that there was enough in the use of the premises, in the lack of warning, and other circumstances to which we have referred, to fairly carry that question to the jury, and that it was not, as held in the court below, to be resolved in favor of the defendant, as a question of law, but should have been submitted to the jury under proper instructions. If the jury should find, under the circumstances, that the boy was not a trespasser, but was upon the grounds of the company under an implied license, then we think the question of negligence should have been left to the jury. The plaintiff's testimony tended to show that the approaching cars had no brakeman upon them; that no warnings were given; that no means were taken to avoid collision with persons who might be expected to be found upon the tracks of the company; that the boy had passed through the opening from the canal, and was returning, when, without warning, the cars were pushed against him. Under such circumstances, it might properly be left to the jury to determine whether such management was negligence.

As to the contributory negligence of the boy, there is nothing in the case to require a different conclusion than we have herein reached. It is familiar law that a child, under such circumstances, is required only to use that degree of care which may be expected of one of its age and experience.

Upon the whole case, we are of opinion that there was sufficient conflict in the testimony to have required the submission of the issues to the jury, and that the learned judge erred in treating the matter as one of law, to be solved in favor of the company. The judgment will be reversed, and the cause remanded for further proceedings consistent with this opinion.