## NEW YORK, N. H. & H. R. CO. v. KMETZ.

(Circuit Court of Appeals, Second Circuit. January 30, 1912.)

### No. 146.

**1.** RAILROADS (§ 312*)—CROSSINGS—DUTY TO TRAVELERS.

Where the public has been long permitted to cross railroad tracks at a given point, the railroad company must give reasonable warning of the approach of its trains there.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 988–1001, 1003; Dec. Dig. § 312.*

Duty to give warning signals at crossings, see note to Chesapeake & O. Ry. Co. v. Steele, 29 C. C. A. 90.]

**2.** RAILROADS (§ 300*)—CROSSINGS BY CUSTOM—DUTY OF COMPANY.

A person crossing a railroad track at a point where the public had long been permitted to cross is not a mere trespasser; and the company was bound to operate its trains with care and caution to avoid injuring him by keeping a close lookout and by giving timely signals by whistle or bell.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 955; Dec. Dig. § 300.*]

**3.** RAILROADS (§ 321*)—INJURIES AT CROSSING—CHILDREN—LIABILITY.

A boy seven years old injured at a railroad crossing was presumptively non sui juris, and the railroad company owed him a higher duty than it owed to an adult.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1017; Dec. Dig. § 321.*]

**4.** RAILROADS (§ 350*)—PERSONS ON TRACK—INJURY—NEGLIGENCE—JURY QUESTION.

Whether a railroad company sued for injury to a child struck at a crossing was negligent *held*, under the evidence, a jury question.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 350.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Joseph Kmetz, by John Kmetz, his guardian ad litem, against the New York, New Haven & Hartford Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

On writ of error to review a judgment for $31,175.45 entered upon the verdict of a jury for $31,000 in favor of the plaintiff for personal injuries sustained by him while crossing the defendant's tracks near Stratford, Conn., on April 27, 1909. The parties will be referred to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the opinion as they appeared in the Circuit Court, viz.: as plaintiff and defendant.

Charles F. Brown and Charles M. Sheafe, Jr., for plaintiff in error.

Herbert C. Smyth and Rufus M. Overlander, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. [1, 2] On a bright, clear April day, the plaintiff, who was seven years of age, was run over by a train operated by the defendant, and injured to such an extent that both legs were amputated above the knees. The point where the accident happened was on the defendant's main line about three miles east of Bridgeport, Conn. The four tracks had been fenced off from the streets running parallel with them upon either side by a wire fence, but for years prior to the accident there had been an opening at a point where Thompson avenue (which runs at right angles with the railroad) crosses Seymour street on the northerly side of the tracks, and another opening on the southerly side to Stratford avenue. This was not a regular street crossing, but the proof is that for years it had been used by persons residing in the vicinity and that many of the residents of Hollister Heights upon the northerly side of the track passed over this crossing to get their mail, which was delivered from a trolley car running on Stratford avenue. It also appeared that about 25 of the children attending school on the northerly side of the tracks passed over this crossing four times a day and it was also used by employés of the railroad company. This use of the crossing was open and notorious and was well known to the railroad officials. The approach to the railroad tracks upon both sides of the roadbed had been filled up and on the southerly side the depression had been bridged by a culvert placed there by employés of the railroad.

It is unnecessary to state the other facts relating to the locus in quo as there can be no question that for several years prior to the accident there had been a beaten path five or six feet wide across the tracks at Thompson avenue, which had been used habitually and daily by railroad employés, by school children and by the residents of Hollister Heights. Upon days when ball games were being played, it was used by a much larger number of people. All this was well known to the railway officials.

On the day in question, at about 11:30 o'clock the plaintiff and another boy crossed the tracks to Bratz's store on the southerly side to make a small purchase, and having done so started to cross again, intending to go home. He says that he stopped on the southerly side of the track until an east-bound passenger train had passed, when he crossed the first track and looked to the east, not expecting that another train would be coming from the west. When he turned and looked toward the west he saw a freight train about three feet from him and was immediately struck by what he thinks was the pilot of the engine. There is considerable dispute in the testimony as to whether it was a freight train or a passenger train that struck the plaintiff and also some dispute as to the hour at which the accident

occurred. We do not deem it necessary to enter upon an elaborate discussion of the testimony, as the trial judge, in his charge, presented the issues to the jury in a careful statement and submitted all questions of fact to them for decision. It is a matter of no importance that an appellate court might possibly reach a different conclusion upon some of the questions in dispute. The fact remains that the jury were fully justified in finding that at about the hour of noon on a clear day in April a train belonging to the defendant ran over the legs of the plaintiff without giving him notice of its approach either by bell or whistle and that the accident occurred on a four-track road at a point where for many years there had been a railroad crossing which had been notoriously used by people in the vicinity with the full knowledge of the defendant. The defendant argues that the motions made for the direction of a verdict at the end of the plaintiff's case, and again at the close of the evidence should have been granted. These motions are based on the proposition that the defendant was guilty of no negligence and that it appeared affirmatively that the plaintiff was guilty of contributory negligence. The defendant cites numerous cases to establish the proposition that the defendant was not at fault for having failed to fence its tracks at Thompson avenue. We do not understand that the case for the plaintiff rests upon the proposition that the defendant should have fenced the crossing, but upon the ground that having by long acquiescence permitted it to be used by a large number of people and knowing that it was so used, it should have exercised greater care in watching the tracks and giving notice by proper signals of the approach of its trains. We do not understand that full compliance with the state statutes is the only duty which a railroad owes the public lawfully upon its tracks. Let it be assumed that everything which the state law required was done at the Thompson avenue crossing. It certainly will not be contended that such compliance permitted the defendant to run over a child at that point if due diligence and care could have prevented it.

The law applicable to such a situation was forcibly stated by Judge Gilbert as follows:

"Neglect on the part of the person in charge of the engine to use ordinary care to avoid injuring a person on the track, is, in contemplation of law, equivalent to intentional mischief. He has no more right to run over a person, lawfully or unlawfully, rightfully or wrongfully, on the track, if he can, by the exercise of ordinary care, avoid doing so, than he has to shoot him. * * * Adults may be reasonably expected to take notice of the signals and warnings, and remove themselves out of danger, and if they do not, and if an accident eventually happens, no liability against the company will ensue. But, for obvious reasons, in the case of a small child like the plaintiff, such reliance upon the signals and warnings cannot be reasonably indulged, and it is the duty of the engine driver to act with a greater degree of care and circumspection than in the case of an adult." Kenyon v. New York Central R. Co., 5 Hun (N. Y.) 479.

After the above decision the case was retried and a verdict for the plaintiff was affirmed by the General Term and by the Court of Appeals.

We think the law of Connecticut, of New York, and of the federal courts in these states, not to mention many other jurisdictions, is to the effect that, where by long acquiescence the public has been permitted to cross. railroad tracks at a given point, the duty is imposed upon the company to give reasonable warning of the approach of its trains.

In Pomponio v. N. Y., N. H. & H. R. Co., 66 Conn. 528, at page 541, 34 Atl. 491, at page 495 (32 L. R. A. 530, 50 Am. St. Rep. 124), Judge Torrance, considering facts similar to those in the present case, said:

"Under these circumstances the defendant was clearly charged with the duty to use reasonable care towards those using this crossing, whether they used it under a license or under an implied invitation; a care proportionate to the danger to be reasonably anticipated from the act done, and reasonably· adequate under the circumstances to prevent injury from that act to those who at that time would probably be rightfully using the crossing."

In Swift v. Staten Island R. Co., 123 N. Y. 645, at pages 648, 649, 25 N. E. 378, at page 379, the court says:

"Where the public have, for a long time, notoriously and constantly been in the ·habit of crossing a railroad at a point not in a traveled public highway, with the acquiescence of the railroad company, ·such acquiescence amounts to a license, imposes a duty upon the company, as to all persons so crossing, to exercise reasonable care in the running of its trains, so as to protect from injury."

See, also, Barry v. N. Y. Central, 92 N. Y. 289, 44 Am. Rep. 377, and Byrne v. N. Y. Central, 104 N. Y. 362, 10 N. E. 539, 58 Am. Rep. 512.

In Tutt v. Illinois Central, 104 Fed. 741, at page 743, 44 C. C. A. 320, at page 322, Judge Day says:

"But where they (persons using the track) may be expected to be, and where an implied license has arisen from the conduct of the company, it is bound to use care commensurate with the circumstances to avoid injury to such persons."

See, also, Garner v. Trumbull, 94 Fed. 321, 36 C. C. A. 361, and Cahill v. Railroad Co., 74 Fed. 285, 20 C. C. A. 184.

It is unnecessary to multiply authorities as we think there can be no doubt, under the law applicable to ·these parties, that the plaintiff was not a mere trespasser and that the defendant owed him the duty of running its trains with care and caution at the Thompson avenue crossing. The law required defendant's servants in charge of its engines to keep a close watch of the track ahead, and to give timely signals by whistle or bell, or both, to persons on the tracks or about to cross them.

[3] The law as to legal status of the plaintiff is well settled. He was presumptively non sui juris and the defendant owed him a higher duty than it owed to an adult who, in such circumstances, would know better how to take care of himself. The plaintiff, a boy of seven years of age, could not be expected to use good judgment when

confronted by such a sudden peril. In the Tutt Case, supra, the plaintiff was six years of age, and the court said:

"As to the contributory negligence of the boy, there is nothing in the case to require a different conclusion than we have herein reached. It is familiar law that a child, under such circumstances, is required only to use that degree of care which may be expected of one of its age and experience."

In the Byrne Case, supra, the court said:

"The law is not so unreasonable as to exact from an infant the same degree of care and prudence in the presence of danger as is exacted from adults. An infant, to avoid the imputation of negligence, is bound only to exercise that care which can reasonably be expected of one of its age."

[4] We are satisfied, therefore, that the motions to direct a verdict were properly denied. The questions of negligence were questions of fact and were presented by a charge showing entire impartiality.

The engineer and fireman of the train which, according to the testimony, probably struck the plaintiff, both testified that they did not see him upon the track, and did not know of the accident until some time afterwards. They are, therefore, left in this dilemma. If what they say is true, the jury may have found that they were guilty of negligence in not seeing the plaintiff. It is the duty of the engineer, or the fireman, in case the engineer is occupied with other duties, to look ahead, especially when passing through towns and villages, and where, as in this case, little children are constantly passing to and from school. At such a place it was clearly the duty of the engine driver to be on the alert. If, on the other hand, the engineer and fireman did see the plaintiff on the track, they should at least have endeavored to save him by blowing the whistle vigorously and ringing the bell. They did neither and no warning of any kind was given to the plaintiff. It is true that the plaintiff testifies that after the passenger train passed, the smoke prevented him from seeing the advancing freight train and it is argued that if he could not have seen the train, those on the engine could not have seen him. This was a persuasive argument to address to the jury and no doubt it was forcibly presented. But the jury may have reached the conclusion that the plaintiff was mistaken as to the density of the smoke, and that his testimony as to such details at the supreme moment when he turned and saw the engine only a few feet away, was not to be implicitly relied on. They may have thought it improbable that the smoke of the passenger train should be so dense and hang so low as to obscure the view of the tracks directly in front of the freight train, and especially so when no one upon the freight alludes to the smoke. In other words, the jury might have found that the engine men could have seen the plaintiff in time to have blown an alarm signal which might have saved him.

Karl Barber, a boy about the same age as the plaintiff, testified that the plaintiff was injured by endeavoring to steal a ride on the freight train; that he caught hold of a handle on a car near the end of the train but was unable to get his feet on the handle and dropped off, with the result that his feet fell on the rails and were

crushed. There are several circumstances which tend to confirm this version of the accident, but, on the other hand, it seems unlikely that a boy of seven years would make such a foolhardy attempt to get on board a rapidly moving freight train. However, had the jury found for the defendant upon this issue, the verdict would not have been against the weight of evidence. It was clearly a question of fact with the testimony and the presumptions very evenly balanced and was properly left to the jury to decide.

We conclude, therefore, that the questions of negligence were fairly presented to the jury and that the verdict was one which the jury were justified in reaching.

The judgment is affirmed with costs.