### SOUTHERN RY. CO. v. SMITH.

(Circuit Court of Appeals, Sixth Circuit. June 2, 1914.)

No. 2447.

1. RAILROADS.(§ 400*)—INJURY TO PERSONS ON TRACK—NEGLIGENCE.
   Negligence with respect to injuries inflicted by railroad trains upon individuals can rarely, if ever, be absolutely defined as matter of law, but is a question of fact depending upon the given circumstances, all of which must be considered together.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

2. RAILROADS (§ 400*)—ACTION FOR INJURY TO PERSON ON TRACK—QUESTIONS FOR JURY.
   Plaintiff's intestate called at a station on defendant's railroad for some baggage and was directed by the agent to go to a freight shed diagonally across the tracks and across the tracks of another road and obtain a key from the porter. Along the side of the shed was a platform waist-high, with steps at the end, but the way to such steps was blocked by two cars standing on defendant's track. At a short distance from the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cars in one direction was an engine, and in the other direction was another car. The porter was on the platform opposite the space between the cars, which was 8 or 10 feet wide, and decedent passed through it to the edge of the platform. While there the engine crashed violently against the two standing cars, and as decedent attempted to jump back through the opening he was caught and crushed. The cars might have passed him in safety if he had stood still close to the platform. *Held,* that the questions .of defendant's negligence in sending decedent, by its agent, to the shed without cautioning him with respect to the switching cars or warning the crew in charge of them of his presence or in the failure of such crew to observe and warn him before .moving the cars, and of decedent's contributory negligence, were properly submitted to the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1365–1381; Dec. Dig. § 400.*]

3. RAILROADS (§ 386*)—ACTION FOR INJURY TO PERSON ON TRACKS—CONTRIBUTORY NEGLIGENCE.

Whether plaintiff was entitled to invoke the rule which might excuse the action of decedent in attempting to escape between the cars, as one taken in .a sudden emergency, depended upon whether decedent was negligent in standing where he did, and defendant failing in due care.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1295; Dec. Dig. § 386.*]

4. COURTS (§ 332*)—RULE OF STATE COURTS—CONTRIBUTORY NEGLIGENCE.

The rule of the federal courts is that contributory negligence to constitute a defense in an action for injury must have directly and proximately contributed to the injury, and a rule of state courts, adopted as a rule of evidence, that a less degree of negligence may be considered in mitigation of damages, is not binding on the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 911; Dec. Dig. § 332.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by C. L. Smith, administrator of the estate of W. E. Smith, deceased, against the Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. G. Timberlake, of Jackson, Tenn., for plaintiff in error.
J. E. Bell, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. This writ is prosecuted to review a judgment in favor of the plaintiff for the alleged negligent killing of his intestate. At Grand Junction, Tenn., a small hamlet, the tracks of the Southern Railway Company and of the Illinois Central cross each other at right angles and at grade; those of the Illinois Central running north and south and those of the Southern extending east and west. The two roads maintain a joint passenger depot, which is on the northwest of the four corners. Diagonally opposite (south-

east) from the passenger depot was the covered freight shed, used for loading and unloading freight. Each road had two tracks; the Illinois Central main track adjoining the passenger depot on the south, the Southern main track on the east. The Illinois Central house-track ran in front of and close to the west end of the freight shed, the house-track of the Southern running close to and by the northerly side of that shed. There was a platform, about waist-high, north of the freight shed, between it and the Southern house-track. Steps from the west end of this platform reached the ground near the Illinois Central house-track. There was no walkway provided for pedestrians between the passenger depot and the freight shed; it being necessary, in going from one to the other, to cross both series of tracks.

Just before the accident, which occurred about noon, decedent drove to the passenger depot to get a piece of baggage for which he held the check. The testimony, while not altogether harmonious, tended to show that decedent was told by the station agent that the key of the baggage room was then in the possession of the porter, who was at the freight shed; that decedent was directed by the agent to apply to the porter, and left the passenger depot on that errand. At this time car switching was being done in connection with a local freight train. Two freight cars were standing on the Southern house-track, next to the platform of the freight shed, but extending some distance across the Illinois Central tracks, and so preventing direct access from the passenger depot to the steps of the freight shed. From 8 to 10 feet to the rear (east) of these two cars was a third car. Opposite the opening between these cars, and inside the open freight shed, was the porter referred to. Decedent, in order to reach the porter, was thus obliged either to go around the westerly end of the two freight cars, or around the easterly end of the single car, or through the opening between the cars, which was the shortest way. The engine was at the time somewhere from 100 to 300 feet west of the freight shed. Decedent passed through the opening between the cars and into contact with the edge of the platform. Just after he reached that point, and while speaking with the porter, a cut of cars was shoved by the engine with great force against the two cars, projecting them against the single car in the rear. The evidence supports an inference that decedent was frightened by the loud and sudden noise of the impact between the shoved cars and the two standing cars, tried to retreat through the opening through which he had come, and in doing so was caught and crushed. There was in fact room for a man to pass between the edge of the platform and the cars, and so beyond the shed, and had decedent remained where he was when frightened by the noise he would not have been injured.

Defendant's motion, at the close of the trial, for directed verdict was denied. The grounds of negligence principally relied upon by plaintiff are: (a) The act of the station agent in sending decedent, under the circumstances stated, to the porter at the shed, instead of going himself; (b) the failure to warn decedent of the approach of cars while he was transacting his business with the porter; and (c) shoving the cars attached to the engine with unnecessary violence

against the standing cars. The important question is whether the court was right in refusing the request for directed verdict; and this involves the question whether there was proof of actionable negligence on defendant's part, and, if so, whether decedent's contributory negligence conclusively appeared.

We think an issue of fact as to defendant's negligence was presented. The evidence tended to show that decedent went to the freight shed on defendant's invitation and on a lawful errand connected with its business. If defendant saw fit to send decedent on this errand, it was its duty to exercise reasonable care to prevent injury to him, conceding a lack of actionable negligence in merely sending him. The more important questions relate to what was, under the circumstances, reasonable care and whether such care was exercised.

Defendant urges that the place where the accident occurred was part of its switching yards; that (as in fact appears) decedent was a man of intelligence and mature years and familiar with the situation and surroundings; that it was obvious that switching operations were going on; that, as may be conceded, the statutory precautions relating to lookouts and whistle have no application to mere switching yards; that decedent was merely a licensee, and so crossed the tracks in question and assumed the position stated at the peril of injury from normal switching operations.

[1] If this place were merely a switching yard this contention would apply. But it was not merely a switching yard; it was also a freight shed; and, as the jury were at liberty to find, decedent was invited to transact business at this place while switching operations were going on. The case therefore presents features not found in the ordinary case of yard switching. Negligence with respect to injuries inflicted by railroad trains upon individuals is a question depending upon the given circumstances, and can rarely, if ever, be absolutely defined as matter of law; in determining the question of negligence all the circumstances must be considered together. Marcott v. Marquette, H. & O. R. R. Co., 47 Mich. 1, 5, 10 N. W. 53.

[2] There is force in the suggestion that the location of the three standing cars (especially the protruding of the two westerly ones across the Illinois Central tracks) furnished evidence that the latter cars at least were liable to be disturbed in the course of switching operations. On the other hand, at least one of these cars, as well as the single car, adjoined the freight shed platform, where cars are naturally loaded and unloaded; and in view of the blocking of the usual entrance to the freight shed, the opening left between the cars, the location of the porter, and the errand on which decedent was sent, we think it was open to the jury to find that decedent was impliedly invited to use the passageway between the cars for access to the freight shed, if that way appeared the more feasible. Either way involved crossing the track on which switching was being done, with more or less danger of injury, differing, at most, only in degree. Where a train is cut in two, to enable passengers or the public to cross the track for the purpose of taking trains, entering depot or merely traveling the highway, due warning is required before closing the gap.

214 F.—60

Had the opening in question been a mere private way over which the public was regularly permitted to cross, the duty of reasonable care to prevent injuries to travelers whose presence was reasonably to be anticipated would have rested upon the railroad company. Felton v. Aubrey (C. C. A. 6th Cir.) 74 Fed. 350, 358, 20 C. C. A. 436; Tutt v. Illinois Central R. R. Co. (C. C. A. 6th Cir.) 104 Fed. 741, 744, 41 C. C. A. 320; New York, N. H. & H. R. R. Co. v. Kmetz (C. C. A. 2d Cir.) 193 Fed. 603, 606, 113 C. C. A. 471; Trivette v. C. & O. R. R. Co., 212 Fed. 641, 129 C. C. A. ——, decided by this court April 7, 1914. The situation here, though not identical, is not entirely destitute of analogy, if the fact of express or implied permission to cross the tracks at the place in question is found. We think it cannot be said, as matter of law, that defendant owed no duty of reasonable care in warning decedent that it was about to close the gap, or to refrain from moving the cut of cars so violently as to cause injury to decedent while using this passageway. We think it does not conclusively appear that due care was exercised in preventing injury. True, decedent, when standing next to the platform, was obscured from the view of the engineer by the presence of the two standing cars; but no conclusive reason appears why decedent should not have been in view of the fireman, if in the cab, or in view of the switching crew, if its members were in their proper places on the ground; and we cannot say that the mere automatic ringing of the bell throughout the entire period of switching operations (as testified to by the engineer) was sufficient warning that the two standing cars were about to be shoved across the opening. Moreover, we can scarcely say, as matter of law, that the station agent, in the circumstances stated, owed no duty of warning those engaged in switching operations to watch out for decedent; for there was room for an inference that the agent knew what the switching crew might not have known. Nor is it a conclusive answer that decedent was not in fact within striking distance of the car had he remained where he was, and that thus defendant's negligence did not directly cause the accident. The argument to this effect overlooks the liability (which it was open to the jury to find was reasonably to be anticipated) that decedent in the face of an apparent danger of collision, under the influence of fright and in the exercise of the instinct of self-preservation, would make just such movement as he did make. See Flower v. Witkovsky, 69 Mich. 371, 376, 37 N. W. 364. There was evidence that the impact of the shoved cars upon the two standing cars was so violent as to cause a rebound of 15 feet, and a very loud noise. So far as conclusively appears from the record, the margin of safety in decedent's position may have been narrow; and the jury may well have found that decedent reasonably failed to appreciate that he was safe where he was. In Southern Railway Co. v. Sutton, 179 Fed. 471, 103 C. C. A. 51, which was a case arising under the Tennessee Statutory Precautions Act, we held correct an instruction that the plaintiff did not pass "beyond striking distance," so long as he was still so close to the track, that having due regard for the instinct of self-preservation and the involuntary movements of the body, there was still a reasonable probability or likelihood that he might fall or be

thrown against the side of the engine or train as it passed him. We think the general principle there involved has more or less application here.

[3] It follows, we think, from what has already been said, that the decedent cannot be declared, as matter of law, guilty of negligence in going between the cars and the platform, nor in standing between the platform and the cars to deliver his message to the porter. Turning again to decedent's action in trying to escape by passing between the cars: It is of course true that unless defendant failed to exercise due care, or if decedent was negligent in standing where he did, the rule of conduct under emergency would not avail plaintiff. On the other hand, unless decedent was so negligent in standing where he did, and if defendant was negligent with respect to the movement of the cars, the emergency rule would apply. See Pioneer S. S. Co. v. McCann (C. C. A. 6th Cir.) 170 Fed. 873, 879, 96 C. C. A. 49. As said in Union Pacific R. R. Co. v. McDonald, 152 U. S. 262, 282, 14 Sup. Ct. 619, 626 (38 L. Ed. 434):

"Where human life or personal safety is involved, and the issue is one of negligence, the law will not lightly impute negligence to an effort, made in good faith, to preserve the one or secure the other, unless the circumstances, under which that effort was made, show recklessness or rashness."

In the case presented we think it was a question of fact for the jury whether decedent reasonably acted under the stress of such emergency. We therefore conclude that there was no error in refusing to direct verdict for defendant.

[4] The remaining errors discussed need little attention. We think there was no error in refusing to charge, in substance, that decedent's negligence, not proximately but only remotely contributing to the injury, must be considered in mitigation of damages. The rule to this effect which seems to pertain in Tennessee (Railway v. Haynes, 112 Tenn. 712, 735, 81 S. W. 374; Railroad v. Martin, 113 Tenn. 266, 87 S. W. 418) is not founded upon statute, but is merely a rule of evidence adopted by the courts of that state. It is not in harmony with the rules recognized by the federal courts, viz., that the test of contributory negligence is whether the want of care directly and proximately contributed to the injury. Coney Island Co. v. Dennan (C. C. A. 6th Cir.) 149 Fed. 687, 693, 79 C. C. A. 375; Toledo, St. L. & W. Ry. Co. v. Kountz (C. C. A. 6th Cir.) 168 Fed. 832, 840, 94 C. C. A. 244. In the cases cited the rule is applied to negligence in bar of an action; but the rule is the same as respects mitigation of damages, for the rule of comparative negligence is not, in the absence of statute, recognized in the federal courts. The rule of the Tennessee courts, not being founded on statute, is not binding on the courts of the United States. Illinois Central R. R. Co. v. Hart, 176 Fed. 245, 247, 100 C. C. A. 49.

We think the subject-matter of request No. 10 was sufficiently covered by the charge of the court. We have examined all the other assignments, and find no prejudicial error.

The judgment is, accordingly, affirmed, with costs.