## ENGINEER KILLED BY PASSING TRAIN WHILE OFF HIS ENGINE.

Court of Appeals for Hamilton County.

VIRGINIA M. FLANNERY, ADMINISTRATRIX, v. THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY.

Decided, July 12, 1916.

*Negligence—Locomotive Engineer Not a Trespasser—When Momentarily off His Engine on Another Track—Duty of a Railway Company Toward One on Its Track Before an Approaching Train.*

1. A locomotive engineer, who leaves his engine for a few moments and walks a short distance to another track where he sits down on the end of a tie, does not thereby become a trespasser upon such other track nor cease to be acting in the course of his employment.
2. Railways will be held to at least as high a degree of care in the avoidance of injury to human beings as in the case of live stock trespassing upon their right-of-way.
3. Evidence that the engineer of the train, which killed the decedent while running at very high speed, failed to blow his whistle as soon as he discovered the decedent, is sufficient to send the case to the jury.

*Sanford A. Headley* and *Charles Sawyer,* for plaintiff in error.
*Harmon, Colston, Goldsmith & Hoadly,* contra.

GORMAN, J.

This is a proceeding to reverse a judgment of the Superior Court of Cincinnati. At the close of all the evidence offered by the plaintiff and defendant below the court, upon a motion by the defendant, arrested the case from the jury and instructed a verdict for the defendant. It is claimed that the court erred in so doing.

The facts brought out by the evidence necessary to be set out in order to show error, are as follows:

Edward Flannery on the 9th of November, 1913, was in the employ of the Cleveland, Cincinnati, Chicago & St. Louis Railway Company as an engineer, engaged in the switching of cars in the company's yards at Sharonville in this county. About

three o'clock in the afternoon, while he was engaged in switching a cut of cars containing some interstate cars, his engine passed the switch from the siding to the lead track and Flannery climbed off the engine, walked a short distance east from his locomotive and sat down on the end of a tie on the westbound main track, at a point within the yard limits of the defendant company. There was a conflict of evidence as to whether or not he threw a switch before he sat down. While sitting on the end of the tie on the westbound main track he was struck and killed by passenger train No. 19 from Columbus, which was an hour and a half late and running at a speed of between sixty and eighty miles an hour.

The defendant company has a double main track through the village of Sharonville—one known as the westbound track and the other as the eastbound track. The Sharonville yards of defendant company are located along the west side of these two main tracks, extending for a distance of a mile or more. There were employed in and about the yards, at the time Flannery was killed, about one hundred and fifty men who frequently used the yard tracks and also the main tracks in crossing and re-crossing, during all hours of the day, while engaged in their occupations as employees of the railroad company. There was no speed limit prescribed by rule or otherwise for trains running on the main tracks alongside of the yard. There was no rule or direction given to engineers running through the yards on the main tracks to keep a lookout for men who might be on the tracks within the yard limits.

Flannery, from the position where he was sitting, could have seen the engineer on the train which killed him at a point at least seven hundred feet east of the point where he was sitting. There is a conflict of testimony as to the length of time Flannery sat on the track, one witness testifying that he sat there for a minute, and another that he sat there for a period of from five to eight minutes. The testimony is undisputed that Flannery was getting up off the track when he was struck by the engine of the fast train. There was a conflict of testimony as to whether or not the engineer blew his whistle before he struck Flannery and after he saw him. The engineer testified that he did not see

Flannery until he was within one hundred and fifty feet of him, and that he then did everything he could to stop his train.

The evidence discloses that the engineer could have seen Flannery from the cab of the engine at least seven hundred feet east of the point where Flannery was killed.

The deceased left a widow and three children, and the action was brought for their benefit under the statute to recover for the wrongful death of the husband and father.

The sole question submitted to this court is whether or not the trial court erred in arresting the case from the jury.

The fact that the decedent was engaged in interstate commerce, in that he was switching cars used in interstate commerce, brings his case within the federal employer's liability act, found in 35 U. S. Statutes at Large, page 65, approved April 22, 1908. Under this act of Congress:

"Every common carrier by railroad while engaged in commerce between any of the states or territories * * * or between any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband, and children of such employee, and if none, then to the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier," etc.

The act further provides:

"That in all actions brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee," etc.

The act further provides that in an action to recover damages for injury or death of an employee—

"such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employees."

It was claimed by counsel for defendant in this case that, because Flannery was a trespasser upon the railroad, the engineer of the train which killed him owed him no duty until after he saw him, and that inasmuch as the testimony shows that the engineer did everything he could to avoid killing Flannery after he saw him, no liability arose against the defendant company, and that the court was warranted in arresting the case from the jury. Counsel for defendant do not claim that the plaintiff was precluded from recovery if Flannery, the deceased, was guilty of contributory negligence, but plant their defense squarely upon the position that Flannery was a trespasser, and that no duty was owing to him until after he was seen by the engineer of the train which killed him.

In the case of *Cincinnati & Zanesville R. R. Co.* v. *Smith*, 22 O. S., 227, the Supreme Court says, in the syllabus:

"The servants of a railroad company, in operating its trains, are bound to use ordinary care to avoid injury to domestic animals trespassing on the railroad.

"Where such trespassing animals were killed by a train, if the servants of the company having the train in charge, by the exercise of ordinary care and with due regard to their duties for the safety of the persons and property in their charge, could have seen such animals on the track in time to have saved them, it was their duty to have done so, and for their negligence in this respect, where the owner is not guilty of contributory negligence, the company will be liable."

This is a leading case, not only in this state, but outside of this state, upon the question of the duty owing to animals trespassing on a railroad. The rule laid down in this case was approved by the Supreme Court in the case of *L. E. & W. R. R. Co.* v. *Woisel*, 55 O. S., 155, at page 159. So that it appears to be the rule, in this state at least, that the engineer of a railroad company does owe some duty to trespassing animals before he has seen the animals.

If this be a sound rule to apply to a cow or horse or hog, it would seem to this court to be a much sounder rule to apply to a human being. We think the duty rested upon the engineer of this railroad company to exercise ordinary care, with due regard to his duties for the safety of persons or property in his charge, to keep a lookout for persons upon the track, even though they were trespassers thereon.

The question of the contributory negligence of Flannery in this case could not preclude a recovery for his death, because of the modification of the rule laid down in 22 O. S., *supra,* by the act of Congress which enables a recovery notwithstanding the fact of contributory negligence. We think that at least as great care and duty rests upon persons operating railroad trains, to avoid injuring or killing human beings, as rests upon them to avoid killing or injuring domestic animals. According to the claim made by counsel for the defendant in this case, the engineer might close his eyes and run at a high rate of speed along his track, and if he injured or killed any person who happened to be a trespasser upon the railroad, the company employing him would not be liable. Such a doctrine is shocking to our sense of justice. The evidence in this case discloses that if the engineer of this train which killed Flannery had been in the exercise of ordinary care he could have seen Flannery sitting upon the tie at least seven hundred feet east of the point where he was killed. If he had then blown the whistle or had slowed down his train, or attempted to stop the same, the probabilities are that Flannery would still be living to maintain and support his wife and children. The evidence discloses that Flannery required but a very small fraction of a minute, perhaps two or three seconds more, to have cleared himself from the track before he was killed. This time would have been given to him if he had been warned, or if the train had slowed down to a speed of twenty miles an hour, which the engineer testified could have been done if he had made an effort at a point four or five hundred feet east of the point where Flannery was killed.

Counsel for the defendant have cited several cases in this state to the effect that no duty is owing to a trespasser upon the rail-

road company's right-of-way until after the trespasser has been seen, and then the, only duty owing to him is to use ordinary care not to kill or injure him. . The case of *Erie Railroad Co.* v. *McCormick,* 69 O. S., 45, at page 53, is cited in support of the contention of counsel for defendant. That was a case in which the "last chance" doctrine was involved; and the Kassen case in 49 O. S. was followed by the court in 69 O. S., 45. The case of *Railway Company* v. *Workman,* 66 O. S., 509, is also cited in support of their contention. The case of *Byrket* v. *L. S. & M. S. Ry. Co.,* 10 C.C.(N.S.), 73, is also cited, and the third paragraph of the syllabus, to the effect that—

"A railroad company owes no duty to an employee or other person, who is using its track merely as a convenient path of travel, to give notice by bell or whistle of an approaching train," etc.

We have read this case through, and there is not a word in the opinion of the court to support the third paragraph of the syllabus in that case. There has been no provision by our Legislature for the enunciation of a syllabus by circuit courts of this state, and therefore any purported syllabus by a circuit court can not be held to be the law of the case unless it be known that the syllabus was prepared and promulgated by the circuit court itself. The decisions of the circuit court are to be found in the reported opinions, not in any purported syllabi, unless the syllabus is approved and announced by the court as a part of the opinion. We can not believe that any court would support the rule laid down in the third paragraph of the syllabus of the case just cited.

But under our view of the evidence in this case Flannery was not a trespasser upon the railroad. Assuming for the purposes of this case that he was not actually engaged in the performance of his·duties at the time he was killed, he had a right nevertheless to be upon the tracks of the railroad company in the performance of his duty, and he had just left his engine temporarily and walked but a short distance therefrom and sat down upon a tie for sone purpose unknown to the court. We can not say that he was at the time not in the course of his employment.

In our opinion he was still in the course of his employment and in the employ of the railroad company, although not actively in the performance of his duty at the instant he was killed.

Whatever may be the rule in Ohio with reference to liability of the defendant company arising under the federal employer's liability act, we think it will not be disputed that the state courts in the trial of causes involving liability under this act should be governed by the rules laid down by the federal courts in construing the act.

There was in this case evidence tending to show that the engineer did not blow his whistle immediately upon discovering Flannery. Even if Flannery was a trespasser and no duty was owing to him until he was discovered by the engineer, nevertheless we think this item of evidence was sufficient to warrant the court in sending the case to the jury to determine whether or not there was any negligence on the part of the engineer in the failure to blow the whistle. The fact whether or not he blew the whistle at a point one hundred and fifty feet or more away from Flannery, to warn him, was a question to be determined by the jury under all the evidence in the case, and when the evidence was conflicting upon this point we think it was error for the court to arrest the case from the jury. It will not be sufficient to say that even though a verdict had been rendered in favor of the plaintiff the court would be justified in setting the verdict aside, because, as has been repeatedly said by our courts, it was the province of the jury in the first instance to pass upon the facts whether or not they showed culpable negligence entitling the plaintiff to recover.

It was held in the case of *C., R. I. & P. Ry. Co.* v. *Stepp,* 164 Fed., 785, that it is a question for the jury, where the evidence is conflicting, to determine whether or not the bell was ringing or the whistle blown by the engineer, even though the evidence which tended to show that he did not blow the whistle or ring the bell was of a negative character.

In the case of *Railroad Co.* v. *Cole,* 214 Fed., 948, where an employee was injured who negligently remained in the caboose when he should have gotten out and gone back to signal the train, the court held that while at common law the negligence

of the employee would defeat a recovery, nevertheless under the employer's liability act, which expressly abrogates the rule with reference to contributory negligence, or negligence of the plaintiff, the plaintiff was entitled to have his case go to the jury, and could not be defeated in the recovery because he had been guilty of contributory negligence.

As was said in the case of *Grand Trunk Railway* v. *Lindsay,* 201 Fed., 836:

"It is only when plaintiff's act is the sole cause, when defendant's act is no part of the causation, that defendant is free from liability under the act."

The evidence in this case discloses that the train which killed Flannery was traveling at a very high rate of speed, and we are of the opinion that under the circumstances of this case, considering the fact that the Sharonville yards were alongside of this main track, even if the tracks were not a part of the yard, it was a question for the jury to say, whether or not ordinary care required the engineer to slacken his speed in running through or alongside the railroad yards.

For the reasons stated we find that the court erred in arresting this case from the jury and instructing a verdict for defendant.    The judgment is therefore reversed, and the cause remanded for a new trial.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.